CORNELIUS W. LARISON v. THE STATE.

1. An indictment under a statute which makes it a criminal offence to "*send or convey*" an insulting, indecent, lascivious, disgusting, offensive or annoying *letter or communication* to any female, which charges that the accused did "*send and convey*," is technically defective, the words "*send*" and "*convey*" importing a different mode of transmission. But this defect may be cured by amendment, and therefore, to be available, the objection must be taken by demurrer or motion to quash before the jury is sworn.

2. The description in an indictment of the offensive writing—which was sent by mail, inclosed in an envelope—as a "*letter and communication*" is not erroneous, there being no incongruity or inconsistency in describing it as a letter and communication, for it was both.

Larison v. State.

3. A communication is sent, within the meaning of the statute, when it is put in the course of transmission by the accused, with intent that it should reach the person to whom it is charged in the indictment to have been sent, provided that in fact it reaches such person.

4. The indictment charged that the communication was sent to Henrietta C. Mrs. C. was a married woman, residing with her husband. The communication was inclosed in a sealed envelope, directed to her husband at his post-office address and sent by mail. In the same envelope was a letter to the husband requesting him to hand the inclosed to his wife. Mrs. C.'s son got the letter from the post-office and took it home and handed it to her. She opened it and read it. *Held*, that an instruction that if the accused intended the communication for Mrs. C., having taken the means for her to get it, it is a sending to her by the accused, no matter what means he employed for it to reach her, or from what source she received it, was substantially correct.

5. The statute makes the offence indictable only when the communication is sent to a female against her consent. If there be any evidence, direct or circumstantial, tending to show that there was no consent, the question is one for the jury.

6. Where the authorship of the communication is in dispute, a conversation between the accused and third persons, in the course of which things occurred and expressions were used which tended to connect the accused with the contents of the communication, is competent evidence to connect him with the authorship of the communication. But a charge made against the accused in the same conversation, having no relation to the subject matter of the communication, such as a charge that the accused had been guilty of indecent and criminal conduct with another female, is incompetent.

On writ of error to Hunterdon Quarter Sessions.

The plaintiff in error was convicted upon an indictment for willfully and wantonly sending and conveying to one Henrietta Conover, a female, an insulting, indecent, disgusting, offensive and annoying letter and communication, against her will and consent.

The indictment was found under a statute approved March 29th, 1878, entitled "An act to suppress the sending of indecent communications." *Pamph. L.* 1878, *p.* 211. The statute is in these words: "That any person who shall willfully and wantonly send or convey to any female, against her will and consent, any insulting, indecent, lascivious, disgust-

ing, offensive or annoying letter or communication, without lawful purpose in sending or conveying the same, shall be deemed to have committed a public nuisance, and be liable to be punished as for a misdemeanor at common law."

Argued at November Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the plaintiff in error, *R. S. Kuhl* and *A. A. Clark.*

*Contra, E. P. Conkling* (prosecutor of the pleas) and *J. N. Voorhees.*

The opinion of the court was delivered by

DEPUE, J.   The communication for sending which the accused was indicted is set out in the indictment.   It is insulting, indecent, disgusting, offensive and annoying, and was sent without lawful purpose in sending the same.

Error is assigned upon the form of the indictment.   This objection was made in the court below by motion in arrest of judgment.

The language of the statute is "send *or* convey."   The indictment charges that the defendant did "send *and* convey." The indictment in this respect was technically defective.   The words "send" and "convey" import a different mode of transmission.   The principle adjudged in *State* v. *Price*, 6 *Halst*. 203, 215, does not apply.   In that case an indictment under a statute making it an indictable offence to "burn *or* cause to be burned" any building, which charged that the defendant did "burn *and* caused to be burned," &c., was held to be good, for the reason that the expressions "burned and caused to be burned" were neither incongruous nor inconsistent.

But this defect in the indictment might have been cured by amendment.   *Rev.*, *p.* 275, § 43; *Id.*, *p.* 277, § 53.   An objection of this character, to be available, must be taken by demurrer or motion to quash before the jury is sworn.   *Rev.*,

*p.* 277, § 53. It was not taken in this instance until after verdict rendered. Under these circumstances the court would not reverse on this ground, especially as the defect was such as could not have prejudiced the defendant in maintaining his defence upon the merits. *Rev., p.* 284, § 89 ; *State* v. *Robinson,* 6 *Vroom* 71 ; *Connors* v. *State,* 16 *Vroom* 211 ; *State* v. *Gedicke,* 14 *Vroom* 86.

The statute uses the words " letter or communication." The indictment describes it as " a letter *and* communication." This was also made a ground of the motion in arrest of judgment. The writing was enclosed in an envelope and transmitted by mail. It might properly be called either a letter or a communication, and there is nothing incongruous or inconsistent in describing it as a letter and communication, for it was both. The objection is not tenable, and if it were it comes too late.

Exception was taken to the refusal of the court to charge that there was no evidence that the defendant did send or convey to Henrietta Conover the alleged writing or communication.

To make the sending of such a communication indictable it must, by the statute, be sent to a female. The indictment charges that it was sent to Mrs. Conover. Proof that it was sent to her in a legal sense is necessary to sustain the conviction.

The evidence tended to show that the communication was in the defendant's handwriting. It is prefaced by these words: " Solilloquy of Dame Conover, Princes Consort of the Conover Hell, in Conover Dale, near Copper Hill, Hunterdon Co., N. J." The communication contains indubitable evidence that the writer intended that it should be seen and read by Mrs. Conover. Every line of the writing evinces a fixed purpose to traduce, defame and insult her. The purpose of the writer could be fulfilled only by his offensive epithets being brought to the knowledge of the object of his malignity.

Mrs. Conover resided with her husband at Copper Hill, near Ringoes. The communication was inclosed in a sealed

envelope, directed to the husband, David Conover, Copper Hill P. O. The envelope had on it the post-office stamp "Lambertville, January 30th, 1885." Jonathan Conover, a son living at home, got the letter from the post-office at Copper Hill. David Conover, the husband, was sick at home at that time. The son brought the letter home and handed it to his mother. She opened it and read it to the members of the household. Inclosed in the same envelope was another communication addressed "To his Conovership the Prince of the Conover Hell, near Copper Hill, Hunterdon Co., N. J., greeting," and intended for the husband. It had affixed to it a postscript: "P. S. Please hand the enclosed paper to your Consort Dame Conover, the Honored Princess of your establishment."

The writing on which the indictment was founded was intended for Mrs. Conover. It was sent to her husband with a request that it should be handed to her. It was received and read by her. Was the communication "sent to" her within the meaning of the statute?

In *Rex* v. *Wagstaff*, *Russ. & R.* 398, the indictment was on the statute 27 *Geo. II.*, c. 15, for sending a threatening letter to Richard Dennis. The letter was directed to Richard Dennis, and was dropped by the prisoner in the yard of the residence of Dennis. It was picked up by the wife of the prosecutor, who first read the letter herself and then read it to her husband. The judge instructed the jury that if the prisoner carried the letter and dropped it, "meaning that it should be conveyed to Dennis, and that he should be made acquainted with its contents," the letter was sent within the meaning of the statute. The conviction was sustained. The judges thought a letter dropped near the prosecutor, with intent that it might reach him, was a sending to him. In Lloyd's case, which was an indictment for sending a letter to one Salway, demanding money, the prisoner dropped the letter in the vestry-room, which Salway frequented every Sunday, from whence the sexton had picked it up and delivered it to him. Mr. Justice Yates, before whom the case was

tried, reported to the court that " it seemed to him to be very immaterial whether the letter was sent directly to the prosecutor or put into a more oblique course of conveyance by which it might finally come to his hands." The court *in banc* expressed no opinion on this point, the judgment being arrested on another ground.  2 *East P. C.* 1123.

In *Rex* v. *Paddle, Russ. & R.* 484, the indictment charged the prisoner with sending a letter to William Kirby, threatening to burn the house of one Rodwell, and the stacks of hay, corn and grain of one Brook.  Kirby received the letter by post, and it was communicated very soon after to Rodwell and Brook.  It was objected that it was indispensably necessary that the indictment should charge the sending of a threatening letter to the party threatened, whereas it was stated in the indictment, and appeared upon the evidence, that the letter was sent to a stranger, who might have destroyed the letter without the party threatened knowing anything about it.  The court *in banc* considered that the sending the letter to Kirby, as he was not threatened, was not within the statute, and on that account judgment was arrested, manifestly on the ground of a defect in the indictment; but the court intimated that if Kirby had delivered it to Rodwell or Brook, and the jury should think that the prisoner intended he should so deliver it, that would be a sending by the prisoner to Rodwell or Brook, and would support a charge to that effect.

In *Regina* v. *Grimwade*, 1 *Den. C. C.* 30, reported also in 1 *Car. & K.* 592, the case was considered upon the second count of the indictment, which charged the prisoner with sending to one Brown a letter directed to Sir Joshua Rowley, threatening to burn the barn of Brown.  At the trial it was proved that the letter was left by the prisoner at a gate in the public road near Sir J. Rowley's house, directed to him as described in the indictment, and sealed.  Having been found there by one of the witnesses, it was forwarded by him to Sir J. Rowley's house and there deposited in the steward's room.  There it was opened by the steward, who was authorized by Sir J.

Larison v. State.

Rowley to open and read such letters. The steward, having opened and read it, did not deliver it to Sir Joshua Rowley, but handed it over to a constable, who afterwards showed the letter to Brown and to Sir J. Rowley. The learned baron directed the jury to consider whether the prisoner, in leaving the letter as before described, intended that it should not only reach Sir Joshua Rowley, to whom it was directed, but that it also should reach Brown.; and then if they thought so, the learned baron was of opinion that' would be a sending to Brown, and then the prisoner might be found guilty upon the second count. The court affirmed the conviction, on the ground that it was properly left to the jury to say whether the dropping was a sending. In all the cases I have found the principle is either affirmed or recognized, that under statutes similar to that under which this indictment was found, a letter is sent, within the meaning of the statute, when it is put in the course of transmission by the accused, with the intent that it should reach the person to whom it is charged in the indictment to have been sent, provided that in fact it reaches such person. *Jepson and Spingott's Case*, 2 *East P. C.* 1115 ; *Heming's Case, Id.* 1116 ; *Girdwood's Case, Id.* 1120 ; *S. C.*, 1 *Leach* 169 ; *Queen* v. *Williams*, 1 *Cox C. C.* 16 ; *Queen* v. *Carruthers, Id.* 138 ; *Regina* v. *Jones*, 2 *Car. & K.* 398 ; 2 *Whart. Cr. L.*, § 1666 *a*. Nor is the effect of the decisions referred to impaired by the fact that they were made upon statutes which did not specifically require the letter to be sent to any particular person, for by legal construction such statutes are held to require that the letter should be sent to the person threatened, and the indictment thereunder must so allege. *Rex* v. *Paddle, Russ. & R.* 484.

That the communication was inclosed in an envelope directed to the husband cannot alter the case. The writer intended that it should come to the wife's knowledge, and requested that it should be handed to her. When these communications were received, that the husband should have shown them to the wife with a view to discover the writer was, from the character of the communications, natural and

Larison v. State.

to be expected. Where the criminal *animus* is exhibited, and the offender has taken such steps to carry it into effect as would probably produce the result contemplated, the court should not resort to over-nice or strained constructions to shield the party from the consequences of a criminal act which in fact had been accomplished by the very means he selected. The judge properly refused to charge as requested. He also properly denied the request to charge that the defendant, if guilty of any offence, was only an accessory. In misdemeanors there are no accessories. All persons criminated are guilty as principals. The judge's instruction that "if the defendant intended this communication for Mrs. Conover, having taken the means for her to get it, it is a sending to her by him, and makes him the principal, no matter what means he employed for it to reach her, or from what source she received it," was substantially correct.

The request to charge that there was no evidence that the communication was sent to Mrs. Conover against her consent was also properly denied. If there be any evidence, direct or circumstantial, tending to show that there was no consent, the question is one for the jury. Mrs. Conover testified that prior to the receipt of the letter she had no knowledge that such a letter would be sent. Her reply to it, addressed to the defendant, was cogent proof that she had not consented to the receipt of such a communication. The judge charged that it was for the jury to say, from the evidence, whether Mrs. Conover received this communication against her will; that there was some evidence upon that point, but whether sufficient was for the jury to determine. He also added that if the jury was in doubt whether it was by her consent or not, the defendant was entitled to the benefit of the doubt. The instruction was proper.

Exception was also taken to the admission of certain testimony.

Rebecca Prall, the sister of Mrs. Conover, and her daughter Eliza, resided with David Conover. A short time before the communication in question was received Eliza was sick,

and the defendant, who was a physician, attended her professionally. David Conover testified that the defendant ceased his professional visits about the middle of the preceding January. In response to the question why the doctor ceased his visits, he answered that the doctor could not attend the young woman at his house; that he told him that. The witness, who was called by the state, and was on his examination-in-chief, was then interrogated as follows:

"*Q.* State what occurred at the time you told the doctor what you have stated?"

The witness' answer was in these words: "He knocked at the door; I did not ask him in; I then talked with Eliza; he came in and went to the bed; felt of Eliza's pulse; she said, 'Doctor, I have something to say;' she said nothing; I said, 'I will tell you; you have been "bull ragging" around the county to get a place for some of my family, saying they were bad off and would die if not removed;' I said, 'You went in the room and shook your fists over that poor sick woman, and I heard Mrs. Prall say, "You must not shake your fists over my face;"' next he (the doctor) said, 'Now, my hands are in my pocket;' I next said to the doctor, 'Eliza says she wants to stay here, and you can't attend her in my house;' doctor then said, 'Just as I expected; Eliza, I thought you had too much spunk to be cowed down like this;' I said, 'Doctor, you have been here long enough;' he paid no attention; I said again, 'Doctor, you have been here long enough;' he asked Eliza if she had taken the medicine he had left the day before; I said, 'If she had taken a little flour and ginger she would have been just as well off;' he got on his feet and said, 'I have never met but one case like this in my life, and that was Van Nuy's;' I said, 'I have met one nearer by;' I told him I was an eye-witness to one, when his horses were tied to the fence all night; nobody could touch the patient but him, and he could get in the bed with her, and did on that night; nobody in the room excepting me, doctor and Eliza."

Upon the offer of the foregoing evidence, counsel for de-

fendant asked the purpose for which the offer was made. Counsel for the state said the object of the offer was to show that the defendant had attended Eliza and was directed by the witness to cease attendance. Counsel for the state then said that the conversation between the defendant, the witness and Eliza was in substance embodied in the letter.

The counsel for defendant objected to the admission of the evidence, and after it was received asked to have the same stricken out as illegal and immaterial.

The court overruled the objection, to which ruling exception was taken.

The communication on which the indictment was found bore internal evidence that it referred to matters occurring in the Conover family, and to the treatment of some person who was an inmate of that household, and not one of the children, and that that person was a female—"a poor relation." Both communications were inclosed in the same envelope, and testimony which connected the defendant with one connected him with the other. The testimony objected to was offered and admitted by the court in that aspect. So far as the occurrences on that occasion can be connected with these letters by expressions contained in either, what was said by either party at that time was competent evidence. But we think there was nothing in either of these letters that legalized the testimony contained in the last paragraph of the answer of the witness. The charge there was of indecent and criminal conduct of the defendant with another female. Such evidence had a tendency to prejudice the defendant with the jury, and there was nothing in the letters to justify its admission.

For this reason the judgment should be reversed.