UNITED STATES of America

v.

Samuel GROSSMAN, Charles Trachtenberg and Sanford Storm.

Cr. Nos. 135–57, 150–57.

United States District Court
D. New Jersey.

July 12, 1957.

814

Chester A. Weidenburner, U. S. Atty.,
by Irwin I. Kimmelman, Asst. U. S.
Atty., Newark, N. J., for the United
States.

Kapp Brothers, by Leon W. Kapp,
Newark, N. J., for Samuel Grossman.

Albert G. Besser, Newark, N. J., for
Charles Trachtenberg.

Joseph F. Walsh, Newark, N. J., for
Sanford Storm.

HARTSHORNE, District Judge.

Defendants have made a series of motions, and the Government certain related counter-motions, in these cases, in which Indictments have been filed charging the making and using of false statements in a matter within the jurisdiction of the Veterans Administration, specifically affecting certain Home Loan guarantees, in violation of. 18 U.S.C. § 1001. Grossman is the sole defendant in Indictment No. 135–57, which deals with a different transaction from that involved in Indictment No. 150–57, where defendants Trachtenberg and Storm are also involved. Count I of the latter Indictment charges a conspiracy which had as its alleged ultimate purpose the purchase by one Joseph Caldwell, a non-veteran, of a home financed by a Veterans Administration guaranteed loan through the use of dummy veteran purchasers. In addition, this Indictment contains five substantive counts each setting up a separate false document used in this one general transaction.

I. Defendant Trachtenberg, relying on the recent decision of the United States Supreme Court in Jencks v. United States, 1957, 77 S.Ct. 1007, 1013, moves for the pre-trial production of separate statements of the veteran and his wife, the Andersons, and the non-veteran, Caldwell, given on the one hand to the F.B.I., and on the other to the Grand Jury.

In Jencks, at trial, a Government witness had testified as to certain acts of the defendant material to the charge against him. The defense, knowing that this witness had made certain reports to the F.B.I. covering the matters to which the witness had thus testified, asked that these reports be produced for inspection by the Court, to see if they could be used to impeach the credibility of the witness' testimony. The Trial Court denied this application, on the ground that the defense had not yet shown any inconsistency between the testimony and the report. This ruling the United States Supreme Court reversed, saying:

"Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them (the reports) to determine what use may be made of them. Justice requires no less.

"The practice of producing Government documents to the Trial Judge for his determination of rele-

vancy and materiality, without hearing the accused, is disapproved. Relevancy and materiality for the purposes of production and inspection, with a view to use on cross examination, are established when the reports are shown to relate to the testimony of the witness. Only after inspection of the reports by the accused, must the Trial Judge determine admissibility—e. g., evidentiary questions of inconsistency, materiality and relevancy—of the contents and the method to be employed for the elimination of parts immaterial or irrelevant." (Parenthesis this Court's)

But it will be noted that in Jencks the Supreme Court was dealing with a situation which arose, not months before trial as here, due to the impending summer recess, but at trial. As the Court says, the inspection of the report by the defense was "for purpose of discrediting the Government's witness * * * with a view to use on his cross-examination * * *." That Jencks in no wise deals with discovery before trial is also indicated by the fact that its opinion does not even refer to Rules 16 or 17 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., covering discovery before trial. In addition, Judge Palmieri, in the Southern District of New York, in United States v. Benson, D.C.1957, 20 F.R.D. 602, and Judge Moore, in United States v. Anderson, D.C.E.D.Mo.1957, 154 F. Supp. 374, refused pre-trial discovery of statements to the F.B.I., despite Jencks.

The arguments against the discovery defendants now seek are forceful. At this time it is not certain that the persons, whose reports to the F.B.I. are asked, will ever testify as to the matters covered by such reports. The Government may choose not to use these people as witnesses, casualties concerning future trials constantly occur, and the persons involved, for reasons not presently known, may be unavailable as witnesses. Since Jencks dealt only with an

attack on the credibility of *witnesses*, if any of these latter situations arise, the Government would have been compelled to disclose possibly confidential information to the defendants, all to no legitimate defense purpose.

In addition, such an inspection before trial would amount to a statement by the Government, as to whom its witnesses will be. This, in non-capital cases, the law does not authorize. 18 U.S.C. § 3432.

Defendants answer that the pattern of Government prosecution in similar cases has made it clear that there is no doubt that in fact the Andersons and Caldwell will be witnesses. Thus pre-trial disclosure of their statements will not give the defendants any information as to the identity of the Government's witnesses that is not quite clear to them at present. Defense further contend that it will unduly disrupt and delay the trial to wait until then to give to the defense for the first time the statements of the witnesses. Time will have to be given them to read, digest and investigate, and to discuss these statements with their clients. Similarly, the defense claims that it would be unfair to them to have to read, digest, and investigate these statements while under the extreme pressure of actual trial.

But these are both matters which can be properly taken care of by the Trial Judge, perhaps as was done by Marshall, C. J., when he presided at the trial of United States v. Burr, 25 Fed.Cas. page 187, No. 14,694, specially noted in Jencks. There that famous jurist passed on essentially the same question, but after the case had been called for trial, and before the jury had been impaneled. This course of procedure obviates both the above defense objections, since defense then, before the Government even opens its case, can be given adequate time to inspect the statements in question, and this without delaying the actual trial in the slightest.[1] At the argument, the

---

1. It will be further noted that in Burr the Government's statement in question, containing state secrets, was ultimately not used at the trial. But this course Jencks has now apparently overruled.

Government called attention to the lack of value to the defense, and the great in- justice to the public, were the witness' statement to the Government in question to cover not only the subject of his trial testimony, but quite separately, a totally different matter, involving a state secret. This situation—where the statement in question deals separately with two disconnected transactions—was apparently not before the Court in Jencks. Nor does the Government now claim that the statements here given by Caldwell or the Andersons contain state secrets, or concern transactions other than that to which they are expected to testify at the trial. Thus this Court is not now faced with this problem, left open in Jencks, and it naturally will not rule thereon.

Since, normally, Grand Jury proceedings are to be kept secret, F.R.Cr.P. 6(e), it similarly follows that, since defense have no present need to see the statements of these witnesses, either to the Grand Jury or to the F.B.I., when such need can be properly met at, or on the eve of, trial, the present applications of the defense in that regard will also be denied as premature.

■ II. Defendant Grossman moves "to produce and permit Samuel Grossman to inspect and to copy each and every document upon which the Government will rely * * * as part of their proofs." This motion must be denied, since the books, papers and documents requested are not sufficiently "designated", the motion does not show that they belonged to the defendant or were "obtained from others by seizure or by process", nor is there any showing that "the items sought may be material to the preparation of (the defense)." Thus none of the requisites of Rules 16 or 17(c) of the Federal Rules of Criminal Procedure is met.

■ III. The defendants move to dismiss the Indictment because the defendants were called before the Grand Jury even though they allege they were marked for prosecution at the time they were called. It is conceded that the defendants were then told of their Fifth Amendment rights, but not then told that they were marked for prosecution.

Defense contend that when the defendants are the target of Grand Jury investigation it is improper to call them before the Grand Jury at all, and that any Indictment found thereafter is fatally defective, whether they were warned or not. This has been held to be the law in several states, e. g., People v. Bermel, Sup.Ct.1911, 71 Misc. 356, 128 N.Y.S. 524; People v. Gillette, 126 App.Div. 665, 111 N.Y.S. 133, and is implicit in one, not recent, Federal Court decision, United States v. Edgerton, D.C.D.Mont.1897, 80 F. 374. The Government answers that at the time the defendants were called before the Grand Jury it was a John Doe investigation, and in fact, they were not "targets" of the investigation. There is no question but that, if this was the fact, there was nothing wrong in calling the defendants before the Grand Jury. United States v. Scully, 2 Cir., 1955, 225 F.2d 113.

■ However, the Court now makes no factual determination as to whether the defendants were, or were not, marked for prosecution at the time of their Grand Jury testimony. The principle, apparently firmly established by all the recent Federal decisions, is that, even if the defendants were so marked, calling them before the Grand Jury is not grounds for the quashing of the Indictment provided (1) no complaint or indictment is then actually outstanding against them and (2) they are not compelled to testify. The leading case in this regard is O'Connell v. United States, 2 Cir., 1930, 40 F.2d 201, at page 205, where the Court rejected this argument and quoted Professor Wigmore, saying that the Fifth Amendment is "an option of refusal and not a prohibition of inquiry." So long as the defendants are told that they have the option not to answer any questions, their rights are fully protected, and the fact that they are the subjects of the investigation does not make them immune from inquiries, so

long as they are not actual defendants, i. e., no Indictment or complaint is outstanding against them.

The Court calls attention to the fact that any other ruling would create grave problems in the administration of Grand Jury proceedings. Wherever a witness before the Grand Jury is subsequently indicted, it would be necessary to fathom the minds and the hearts of both the Grand Jurors and the United States Attorney, in order to determine whether at the time they were called the defendants were targets of the investigation and were marked for prosecution. Such is the rationale of the general Federal rule. United States v. Burk, D.C.Del. 1941, 41 F.Supp. 916; United States v. Hirsch, 2 Cir., 1934, 74 F.2d 215; United States v. Benjamin, 2 Cir., 1941, 120 F.2d 521; Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566, 577. It is interesting to note that in the recent case of Grunewald v. U. S., 1957, 77 S.Ct. 963, 981, the United States Supreme Court alluded to the present defense argument, as there raised by defendant Halperin, "compelling Halperin to testify before the Grand Jury, when he had already been marked as a putative defendant, violated his constitutional rights * * ." But our highest Court apparently did not consider this argument substantial, since it did not rule thereon, but did grant Halperin a new trial for other trial errors. This would not have been done, had it found substance in Halperin's above claim, identic with that of defendants here. In the light of all the above, it would not be meet for this court to take contrary action.

Thus since defendants were warned of their constitutional rights not to testify, when they were before the Grand Jury, and it was a "John Doe" investigation, it is irrelevant whether or not they were in fact then marked for future prosecution. Defense motions in that regard are accordingly denied.

█ IV. Defendants next contend that all the Indictments are invalid, since they do not state that the matters falsely presented to the Veterans Administration were material.

The Indictment repeatedly says that the false writings contain "materially false and fictitious statements". Defense argues that this means only that the statements were false in substance. The Government contends that this means that the statements were false in a material manner. However, it is not necessary to decide this semantic issue. For Judge Meaney, in United States v. Okin, D.C.N.J.1955, 154 F.Supp. 553, held that no such allegation was necessary in the Indictment. This holding was also reached in United States v. Silver, 2 Cir., 1956, 235 F.2d 375, certiorari denied 1956, 352 U.S. 880, 77 S.Ct. 102, 1 L.Ed. 2d 80. As Silver and Okin show, the statute involved, 18 U.S.C. § 1001, while it specifically makes materiality requisite in penalizing the *withholding* of any information, does not mention materiality in penalizing the *giving* of false information. Obviously it endangers the public to give a governmental agency false information to act on, even if this information is as to an apparently immaterial detail, since this detail may perchance influence the action of the agency in fact. On the other hand, the mere fact that an immaterial detail is withheld from such agency can not endanger the public. Such is the clear rationale of the very words in the statute which the Congress used to express its intent. This Court must, of course, effectuate this Congressional intent.

Furthermore, the Indictment is in the words of the statute. If the statute makes materiality necessary, these statutory words import materiality, not only when used in the statute, but when used in the Indictment. Silver, supra— concurring opinion by Frank, J. This motion is denied.

█ V. Defendant Grossman makes a further series of attacks on the Indictment. He contends that the Indictments are fatally invalid, in not giving the specific facts which bring the transaction within the jurisdiction of the agency of the United States. The Indictments do

charge that they deal with "a matter within the jurisdiction of the Veterans Administration, an agency of the United States". Moreover, the Indictments allege that the defendants "did knowingly and wilfully make, cause to be made, and *cause to be used*" such documents. This sufficiently apprised the defendant that the documents in question were actually used by the Veterans Administration. Furthermore the Indictments are generally in the statutory language. This suffices, save for demands for particulars. The authorities for this principle are too numerous to require citation. There is thus no requirement to specifically allege the facts which place the matter within the jurisdiction of the United States in any more detail than was actually done.

■■ Grossman also charges that the Indictments are too vague, claiming that it is impossible to determine whether he is charged with making, causing to be made, or causing to be used, the matters involved in the Indictments. Judge Meaney, in the Okin case, supra, sustained an Indictment charging the defendants with "causing to be made and causing to be used". Further, the words "making" and "cause to be made" are clearly congruous, not contradictory, and simply indicate that the Government is not now sure which of the three defendants named physically made, or on the other hand, caused others to make, the writing in question. But that is immaterial. Whichever occurred, the criminal result is the same as to these joint defendants. In an old New Jersey case, State v. Price, N.J.Sup.1830, 11 N.J.L. 203, the Court upheld an Indictment which charged that defendant "did burn and cause to be burned". This case was cited with approval in Larison v. State, N.J.Sup.1887, 49 N.J.L. 256, 9 A. 700, the very case relied upon by the defendant, where the Indictment, there disapproved, used incongruous words, not congruous words, as here. Nor is it objectionable that the Indictment charges that the false document which the defendants "caused to be made" they also "caused to be used". If the defendants simply made, or caused to be made, a false writing concerning a matter within the Veterans Administration's jurisdiction, but immediately destroyed it before using same, it is highly unlikely that Congress meant that they should be punished. It is only when such false instrument was made or caused to be made, and thereafter caused to be used with the Veterans Administration, that a criminal offense occurred. See also Mosca v. United States, 9 Cir., 1949, 174 F.2d 448, where an Indictment in the very words above was upheld as valid.

■ Defendant Grossman also moves to dismiss the substantive counts of Indictment No. 150–57 on the grounds that there is a fragmentation of the offense— each count is based on a separate false document, all of them dealing with the same general transaction. But Congress clearly so intended. Its words in the statute penalize the use before a governmental agency of *"any"* false document. Cases dealing with a different Congressional intent, alluded to by defendant, are thus inapposite.

The motion is denied.

VI. Defendant Trachtenberg moves for the striking of certain language in the Indictments as surplusage, under Rule 7(d). Extended discussion is here unnecessary. The language is not surplusage, and is certainly not prejudicial to the rights of the defendant. If anything, the allegedly surplus language is helpful to defendant, in that it indicates the specific manner in which the documents were false.

These motions are denied.

VII. Defendant Trachtenberg moves to dismiss Count VI of the Indictment, which is directed only against him, on the ground that it is vague and indefinite. It charges Trachtenberg with falsely stating to the Veterans Administration the inclinations and feelings of the Andersons as to selling the property.

Counsel have submitted to the Court the letter of August 3, 1956 from Trachtenberg to the Veterans Administration on which this count is admittedly based.

This letter does not state the Andersons' inclinations or feelings, but what Trachtenberg "was given to understand" in that regard. Thus it purports to state Trachtenberg's state of mind, not the Andersons' state of mind. Hence the Government evidently intends to prove facts at variance with the Indictment. Since this variance would render further proceedings on Count 6 futile, this Court will not proceed to discuss the objection raised by Trachtenberg thereto, unless the Government establishes that no such variance in fact exists.

The above disposes of the substance of the many points raised by each and all of the defendants and by the Government, as well, in the numerous motions made by them in the two above cases. Counsel will confer as to the form of order necessary to effectuate the principles set forth by the Court in this opinion, and present same to the Court for entry accordingly.