**UNITED STATES of America,**
**Plaintiff,**

v.

**Benjamin WALDMAN, Defendant.**

**Cr. A. 66–57.**

United States District Court
D. New Jersey.
March 5, 1958.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Jerome D. Schwitzer, Asst. U. S. Atty., Asbury Park, N. J., for plaintiff.

Anthony A. Calandra, Newark, N. J., for defendant.

HARTSHORNE, District Judge.

The question here is as to the meaning of the recent statute, 18 U.S.C.A. § 3500, enacted by the Congress as a result of the decision of the United States Supreme Court in Jencks v. U. S., 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed. 2d 1103. A witness for the Government, Rosenberg, testified at length as to a certain fraud basic to the pending indictment against defendant, Waldman. Upon the conclusion of Rosenberg's direct testimony, Waldman's counsel demanded the production of any statement of Rosenberg, or report thereof, held by the Government as to the subject of such testimony. The Government admitted that it had a report of such testimony, but denied that this "statement" was of the nature which it was required to turn over to the defense, under the above statute, for inspection at the trial before cross-examination of the Government witness.

We turn to the bearing of the statute upon the doctrine laid down in Jencks. The decision in that case was based on the well known principle that if a witness who has testified has previously made admissions contrary to his testimony, these admissions are provable to affect his credibility.

"Requiring the accused first to show conflict between the reports and the testimony is actually to deny the accused evidence relevant and material to his defense." Jencks, 353 U.S. at page 667, 77 S.Ct. at page 1013.

"Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less. * * * Only after inspection of the reports by the accused must the trial judge determine admissibility—e. g., evidentiary questions of inconsistency, materiality, and relevancy * * *" ibid., 353 U.S. at pages 668, 669, 77 S.Ct. at page 1013.

It should be noted that in Jencks the Supreme Court does not deal expressly with the constitutional validity of the procedure there as a violation of "due process" but with the "standards for the administration of criminal justice in the federal courts." Ibid., 353 U.S. at page 668, 77 S.Ct. at page 1013. It should further be noted that both Jencks and the above statute deal not with the defendant's right to inspect such statements at pretrial, but only at trial, United States v. Grossman, D.C.N.J.1957, 154 F.Supp. 813.

The legislative history of this statute is illuminating as to its meaning.[1] Therefrom it appears that the report of the Senate Committee on the Judiciary, in introducing the Department bill to implement Jencks, "was not to nullify but to clarify the Jencks decision." Ibid., at page 1. "Legislation was necessitated by the varying district and circuit court interpretations of the decision, some of which went far beyond the apparent holding of the court." For instance, certain courts incorrectly held that Jencks required the Government to furnish such statements of witnesses at pretrial, i. e., before they were witnesses. Certain courts required statements to be turned over to the defense which dealt with other matters, as well as those on trial, i. e., endangered defense counsel's roving at will through the Department of Justice files. In the legislative history it further appears from the Senate Committee Report, "that the bill was designed to preserve the due process rights of defendants." Ibid., at page 2.

It should be noted that the Department of Justice bill, as originally introduced in the Senate, only called for the disclosure of written statements of the witness himself as covered by the statute, subparagraph (e), subdivision (1), but did not cover at all oral statements reported

1. Summary of Legislative History prepared by United States Department of Justice.

by a Government agent, subparagraph (e), subdivision (2), i. e., the nature of the statement here involved. In other words, the Congress liberalized the legislation from that proposed by the Department of Justice.

Thus, in construing the above law, this court must bear in mind, first, its purpose "not to nullify but to clarify the *Jencks* decision," and, second, the intent of the Congress to liberalize the statements to be produced, from the nature of the statements which the Department of Justice desired to be produced. Again, Senator O'Mahoney, in charge of the Department bill in the Senate, said that it, as amended, "would include a memorandum made by an agent of the Government of an oral statement made to him by a Government witness." And Senator O'Mahoney agreed with the following observation of Senator Javits: "As a practical matter, then, what has been done with the so-called records provision [sub. (e) sub. (2) here in question] is to tie down to those cases in which the agent actually purports to make a substantial verbatim recital of an oral statement that the witness has made to him—not the agent's own comments or a recording of his own ideas, but a substantially verbatim recital of an oral statement which the witness has made to him and as transcribed by him." As such the bill became law.

A reading of the page after page after page of this meticulously detailed statement of what Rosenberg told the F. B. I. agent shows clearly that it is "not the agent's own comments or a recording of his own ideas." It is, on the contrary, "a substantially verbatim recital" of what Rosenberg told the agent. Of course, by the "substantially verbatim recital", "verbatim" is not meant. It need not be word for word. It need not use exactly the words of Rosenberg, nor must Rosenberg's words be used in their exact grammatical phrasing. That would prevent the use of any narrative statement. What is meant is, that the statement should give the substance of what Rosenberg said; should give it, so far

as the substance is concerned, substantially in Rosenberg's words. A reading of the statement here in question clearly shows that is exactly what the statement does. It equally clearly shows that the facts there stated are not the mere "comments" or "ideas" of the agent.

As to the Government's objection that the statement was not made "contemporaneously" with the making of the oral statement, this would appear incorrect in fact. The fact is that the original notes were made by the agent while Rosenberg was talking to him. This obviously was contemporaneous. Furthermore, the agent's elaborations of these "key words and phrases" of Rosenberg were made while the agent's "memory was fresh" and were made "not from imagination but from memory." Further it should be noted that the statute requires not that the transcription shall be contemporaneous, but that its recording shall be, as it was. The present statement is, therefore, "a transcription thereof"—the very words of the statute. Nor is the Government's objection sound that the F. B. I. agent took down these original notes by longhand, and not either as a stenographer or by some mechanical recording. The Congress was interested in covering all reasonably accurate statements. It certainly did not mean to say that an F. B. I. agent who did not write shorthand, or did not have a mechanical recording machine handy, was *per se* inaccurate. Indeed, the statute specifically covers an "other recording" than one which is either "stenographic, mechanical, or electrical," the word "other" therefore referring to other manual, as well as other mechanical or electrical, recordings.

Again, the agent admits that after he had made this transcription of his notes he destroyed them and his later elaboration of them. Under the well settled secondary evidence rule, the transcription therefore takes the place of these destroyed notes.

Finally, in the "statement" in question appear certain paragraphs, not purporting to be what the witness told the agent

in detail, but which deal with some preliminary matters. These will be excised by the Court under the statute. But no complicating factors exist as to "national security, confidential character of the report, public interest, or coverage of other transactions than that on trial," which might otherwise affect its use.

The Court therefore orders that, subject to the above excision, the statement be turned over to the defense for its inspection, and the trial be temporarily recessed accordingly.