Hugh C. BROWN and Jean W. Brown, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 72–592.

United States District Court, D. South Carolina, Greenville Division.

March 16, 1973.

Wesley M. Walker, and Harvey G. Sanders, Jr., Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiffs.

John K. Grisso, U. S. Atty., D. S. C., Columbia, S. C., and J. D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., and Leonard D. Van Slyke, Jr., Atty., Tax Division, Department of Justice, Washington, D. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiffs, husband and wife, having instituted a suit for a refund of taxes paid under protest, move this court for an order requiring defendant:

(1) To produce and to permit plaintiffs to inspect and copy the following documents, which were omitted from the list of exhibits which accompanied the report of Special Agent B. R. Lee, which report was dated September 7, 1966: Exhibits 1 through 6, 38, 79, 92, 106, 107, 110, 111, 116, 117, 137, and 145–148.

(2) To produce and to permit plaintiffs to inspect the report of Special Agent B. R. Lee dated September 7, 1966.

An affidavit accompanying, and in support of, the motion states in part:

(5) Present counsel for taxpayers, including deponent, were retained many years after the tax years at issue, and many years after all determinations had been made by representatives of the United States respecting the plaintiffs' records. Therefore, such counsel has had no connection with the background facts as they were being developed, having been retained only for the purpose of initiating this tax refund action.

(7) Deponent believes it is essential to present counsel, and for the fair and adequate representation of the plaintiffs, that the Defendant be required to produce the reports or analyses upon which the Defendant bases its conclusions that the Plaintiffs, for the years in issue, willfully attempted to evade taxes and filed false and fraudulent tax returns.

The complaint, filed May 15, 1972, alleges that on the fourth day of September, 1971, the plaintiffs paid under protest certain sums of additional income tax which were illegally and erroneously

assessed and collected for the years 1961, 1962, 1963, and 1964. The answer, filed July 17, 1972, admits the payments under protest for the years in question, alleges willful evasion on the part of the plaintiffs, and charges fraud.

At a recent hearing, in Greenville, it was determined that the court had best examine the records *in camera*, and the court has had before it not only those records which have been produced, but the records which have been withheld, and which the motion seeks to have produced. A statement of the factual background is relevant.

Hugh C. Brown and his wife, Jean W. Brown, hereinafter called taxpayers, are residents of McCormick, where Mr. Brown, during the years in question, operated a General Insurance Agency. At the same time, he engaged in farming activities, and during the years 1961, 1962, and part of the year 1963, he was a member of the South Carolina Public Service Commission. The government's interest in the taxpayers' returns has its genesis in information obtained by Internal Revenue Agent L. E. Stanton, during his examination of the 1961 income tax return of Mrs. H. O. Watson, the mother of Mrs. Brown. It appears that Mr. Brown handled Mrs. Watson's affairs during the period and that he had prepared the return in question. An initial interview between Mr. Stanton and Mr. Brown occurred on July 13, 1965, and was followed by interviews on July 22, 1965, July 26, 1965, August 2, 1965, August 17, 1965, and August 26, 1965. Thereafter, Mr. Stanton interviewed, Mr. Brown from time to time in company with Mr. B. R. Lee, Special Agent, Internal Revenue Service, of Columbia, South Carolina. It appears that after the arrival of Mr. Lee into the picture that the investigation was for the purpose of preferring criminal charges against Mr. Brown, a fact which

did not occur, and such nonoccurrence is unexplained in the record. A determination was made that Mrs. Brown took no active part in her husband's business affairs and had nothing to do with making up the returns; no prosecution was at any time envisioned with regard to her.

In addition to examination of the taxpayers' income from the General Insurance Agency, and the salary as a public service commissioner, investigation was made into the farming income, management fees, pulpwood sales, interest, land rent, and dividend returns. Initially, Mr. Brown did not have an attorney, but the file reflects that on May 26, 1966, Mr. and Mrs. Brown filed a general power of attorney, on Internal Revenue Service Form 2848, giving such power to Julius H. Baggett, an attorney of McCormick, South Carolina. Mr. Baggett is no longer employed, and present counsel were employed more than 5 years after the initial series of investigations and conferences.

■ Having suffered the embarrassment of mandamus[1] in an earlier attempt to give a litigant information his counsel said he needed before this level of the court, this court is somewhat hesitant in trying to enter upon those waters where only bureaucrats walk. A comfort in this situation, however, is the statement by the Chief Judge of this Circuit that, "[W]hen the United States, a Cabinet official, or an agency of the United States comes into the Court as a plaintiff, they are subject to the same rules as private litigants, and the open disclosure which is now demanded of litigants in the federal courts, because of its fairness and its contribution to accuracy in the factfinding process, is equally demanded of such plaintiffs."[2] The court recognizes that, in the present case, the government did not come into the case as plaintiff, but apparently the

---

1. See United States v. Hemphill (C.C.A.4 1966), 369 F.2d 539.

2. Ibid. at 542.

only recourse left open to plaintiffs, if their cause be just, was to repair to the federal courts, or the tax courts, and have an impartial arbiter pass on the tax issues involved. No one could doubt but that the government forced the issue by assessing the tax. The government should occupy no position, better, or worse, than any other litigant, unless some special circumstance exists, as hereinafter discussed.

This court is not faced with a state of facts in which the government seeks to withhold the names and statements of informers. This is not a criminal prosecution. Plaintiffs rely on Rule 501 [3] of the new Rules of Evidence for United States Courts and Magistrates.[4] Defendant, on the other hand relies on Rule 509, particularly Section 509(b).[5] On one hand we have taxpayers who insist that in order to have their day in court, and a just presentation of their cause, they need the information which they seek; on the other hand the government says it needs protection in order that the candor of inter-agency and intra-agency dealings may be preserved,[6] and avoid unwarranted excursions into memoranda and recommendations of its agents. Properly to balance these competing interests is a delicate and difficult task. As was said in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 391, 91 L.Ed.2d 451:

"Since the discovery provisions are to be applied as broadly and liberally as possible, the privilege limitation must be restricted to its narrowest bounds."

and

"Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant." [67 S.Ct. 391]

\* \* \* \* \* \*

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment . . Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." [67 S.Ct. 392]

■ This court recognizes the difference between those intra-agency communications, containing such things as opinions, conclusions, and recommendations reached by government officials in connection with their official duties, as distinguished from computations and facts, or reports of interviews and the like, reached objectively and contained in the government's file. As to the former, a qualified right of nondisclosure has been recognized by the Congress in enacting the Freedom of Infor-

3. Rule 501 provides: Privileges Recognized Only as Provided

Except as otherwise required by the Constitution of the United States or provided by Act of Congress, and except as provided in these rules or in other rules adopted by the Supreme Court, no person has a privilege to:

(1) Refuse to be a witness; or

(2) Refuse to disclose any matter; or

(3) Refuse to produce any object or writing; or

(4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

4. See 56 Federal Rules Decisions 183.

5. Rule 509(b) provides: Secrets of State and Other Official Information

\* \* \* \* \*

(b) General rule of privilege. The government has a privilege to refuse to give evidence and to prevent any person from giving evidence upon a showing of reasonable likelihood of danger that the evidence will disclose a secret of state or official information, as defined in this rule.

6. Fortunately, for the protection of the taxpayers of the nation, the IRS is not given the latitude in classification, much abused, of the Department of Defense (Pentagon).

mation Act (5 U.S.C. Section 552)[7] by the Judicial Conference of the United States in submitting to the Supreme Court on November 19, 1971 the revised proposed Federal Rules of Evidence (Section 509), and by several decided cases. Simons-Eastern Company v. United States of America (N.D.Ga. 1972), 55 F.R.D. 88. See also Kaiser Aluminum Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38; Davis v. Braswell Motor Freight Lines, Inc., 363 F.2d 600 (C.A. 5, 1966); Ackerly v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969); also Rosee v. Board of Trade of City of Chicago, 36 F.R.D. 684, 689 (N.D.Ill., 1965); Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R. D. 318, 325–326 (D.C.D.C., 1966); E. W. Bliss Co. v. United States, 203 F. Supp. 175 (E.D.Ohio, 1961). In the *Bliss* case, it is stated p. 176:

> * * * [I]n all but exceptional cases it is considered against the public interest to compel the Government to produce interagency advisory opinions.

A corollary of this line of reasoning may be found in United States v. Cote, 326 F.Supp. 444, 451 (D.Minn.1971) in which the court upheld the rights of government agents to summons the work papers and memoranda primarily for the purpose of calculating the correct income tax liability of the taxpayers for the years 1965–1968, over the taxpayers' Fifth Amendment claim, reasoning that criminal prosecution was not the objective of the agents at the time and that the discovery was not for an improper purpose.[8] Counsel has not pressed upon this court the issue of whether or not discovery is for a proper purpose, and absent any insistence to the contrary, the court finds that the discovery is for a proper purpose; and it is somewhat

elementary that any discovery employed should be for a proper purpose. Of such import is the case of United States v. Schoeberlein, (D.Md.1971), 335 F.Supp. 1048, 1054.

This court has endeavored to follow *Schoeberlein* and *Simons-Eastern, supra,* and has made an *in camera* inspection of the documents, as furnished by the government for the court's inspection. The government, in its brief, recognizes the distinction here sought to be impressed, and informs the court in writing, "the materials which the taxpayers here seek contain the opinions, conclusions, and reasoning of government officials which were prepared for use and were used in the administrative and decision-making processes of the government, and, therefore, constitute 'official information'." It is the duty of the court to draw the line of distinction.

█ Exhibit No. 1 is an intra-agency report or memorandum, but contains no conclusions, opinions or reasoning. It merely recites, under date of May 16, 1966, the factual result of contacts between revenue agent Stanton and B. R. Lee, special agent. In view of the fact that this document is 7 years old, that another lawyer represented Mr. Brown at the time the information was made available, and counsel claim need in preparation for trial, these facts are proper for discovery. The motion as to Exhibit No. 1 is granted.

Exhibit No. 2 is a general power of attorney executed by the taxpayers to Mr. Baggett. This does not come under any intra-agency classification. As to this exhibit, the motion is granted.

Exhibit No. 3 is a transmittal letter originally directed to Mr. and Mrs. Brown under date of May 16, 1966. If it was mailed to the taxpayers at that time, there is no cogent reason they

---

7. The government in this case did not rely upon the Freedom of Information Act in the hearing before this court, but the court has studied this particular section of the Act, and particularly the exemptions, and annotations applicable thereto in arriving at this decision.

8. See also United States v. Giordano (C.C.A.8 1969), 419 F.2d 564, 568.

should not have benefit of the information now. It will be produced.

Exhibit No. 4 is a memorandum of an interview with Mr. Brown on October 4, 1965. There is no opinion, conclusion, or reasoning expressed therein. The motion as to Item 4 is granted.

Exhibition No. 5 is a memorandum of an interview of October 13, 1965. It is a recitation of the facts disclosed in the interview by Mr. Brown. His present counsel are entitled to be refreshed on this long-past colloquy. It will be produced.

Exhibit No. 6 is a memorandum of an interview of January 18, 1966, with Mr. Brown. There are no opinions, conclusions, recommendations or reasonings therein that should restrict production.

Exhibit No. 38 is a memorandum of an interview of October 29, 1965. It contains no inter-department, or intra-agency opinions, conclusions, reasonings, or recommendations. It should be produced.

Exhibit No. 79 is a memorandum as to certain farm equipment and other equipment and certain facts relative to the claims made by Mr. Brown. It contains no opinions, conclusions or reasonings or recommendations of an inter-department or intra-agency nature. It should be produced.

Exhibit No. 92 is a memorandum of an interview with Mr. Graham, owner of Hercules Distributing Company, New Ellenton, S. C., taken April 5, 1966. It refers to a boat sale to Mr. Brown. This is no different than taking a statement from a witness, and this contains no inter-department or intra-agency conclusion, opinion, reasoning or recommendation. It should be produced.

Exhibit No. 106 is a memorandum of an interview by the two agents with Miss Lucy Brown, aunt of Hugh C. Brown, on March 17, 1966, seven years ago. It would be difficult if not impossible for Miss Brown to be able to relate to counsel what she told the agents; and the fact that she gave a statement puts the statement in the position of all other statements of witnesses in other civil cases, and the court finds no opinions, conclusions, recommendations or reasonings thereon or thereabout. The Exhibit should be produced.

Exhibit No. 107 is a memorandum of an interview taken February 25, 1966, and another interview of January 18, 1965. In view of the number of interviews Brown was subjected to it would be ridiculous, if not absurd, to expect him to remember everything that was said and when. The exhibit contains no conclusions, reasoning, or recommendations, but states facts and should be produced.

Exhibit No. 110 is the report of an interview with Mrs. Richard R. Coker. This is essentially no different from the taking of a statement from someone, except that the statement was not taken in writing or on an electronic machine (and hopefully not taken in order to avoid discovery at a later date). There is no opinion, reasoning, conclusion, or recommendation attached thereto, but a statement of facts as to what the witness said, and should be produced.

Exhibit No. 111 is a report of a formal interview in the presence of Mr. Baggett on June 27, 1966. If Mr. Baggett were allowed to be present, it is difficult to reason that the information is not of such a nature as not to be disclosed. The report contains no opinions, reasoning, conclusions, recommendations, or the like, for any inter-department or intra-agency use. The Exhibit should be produced.

Exhibit No. 116 is a "computation of alleged liability owed and based upon acreage figures furnished by taxpayer's attorney." The attorney was Mr. Baggett, not the counsel presently before the court. The item contains facts, and no conclusions, opinions, recommendations or reasoning, and should be produced.

Exhibit No. 117 is an interim report, but refers to a wedding scheduled to take place in Columbia, and contains no inter-department or intra-agency opinion, conclusion, reasoning or recommendation. It should be produced.

Exhibit No. 137 is a memorandum of an interview with Miss Helen R. Brown, taken March 16, 1966. It is a statement of fact, just as one would record a statement on a dictaphone or some similar apparatus. The document contains no opinions, conclusions, reasons or recommendations for inter-department or intra-agency use. It should be produced.

Exhibit No. 145 is a copy of a letter dated May 24, 1966, and sent by certified mail to Mr. Hugh C. Brown. The withholding of this particular exhibit borders on the absurd since Mr. Brown was sent the original letter. It will be produced.

Exhibit No. 145(a) is a copy of a letter to Attorney Baggett, not present counsel. It should be produced.

Exhibit No. 146 is a memorandum about a telephone call between Mr. Lee and Mr. Brown on October 8, 1965. It should be produced.

Exhibit No. 147 is a memorandum of an interview with Mr. Brown on January 13, 1966. It contains no recommendation, conclusions, opinions or reasoning, and states the facts of the interview. It should be produced.

Exhibit No. 148 is a memorandum of a return of some receipt books to Mr. Brown. There is no reason this should not have been produced earlier.

The second item referred to in the motion is the lengthy report of Special Agent B. R. Lee, dated September 7, 1966. Some of that report borders on the qualified privilege. This court particularly finds that beginning on page 34, and running through page 40, the information contained is in the nature of that to which a qualified privilege against disclosure has been honored as hereinabove discussed. Rather than order the government to produce this document, counsel for the plaintiffs will be allowed to inspect pages 1 through 34, and pages 41 through the balance of the report including appendices and exhibits. Pages 1 through 34 contain an introduction, a summary of the cooperating officer's findings, a history of the taxpayer, evidence, and relative facts. Pages 34 through 40 relate to explanations and defenses, facts regarding intent, with conclusions and recommendations. Beginning at page 41 we have a list of exhibits, followed by a list of witnesses at the beginning of page 55, then 8 appendices of various schedules. The inspection by the plaintiffs' attorney shall be in the Office of the United States Attorney at Greenville, South Carolina, and plaintiff may have an accountant, along with his attorney, district attorney and/or any assistant, any revenue agent designated by the district attorney may also be present if desirable. If inspection cannot be arranged by agreement among the parties, then upon notification of this fact, the court will designate the time, place and hours, etc.

This court has taken cognizance of the statement made on page 5 of defendant's brief supporting the oral argument. In Item 10 of that brief the following language is used, "The exemption from disclosure which the Government claims herein is qualified, and absolute. However, in considering the question of production at bar, the court should carefully weigh the desirability of nondisclosure of the opinions, conclusions and reasonings of officials in the Government's decision-making process and the taxpayer's need of such information for litigating purposes. It is submitted that the policy reasons supporting non-disclosure far outweigh the need, if any, the taxpayer may have for the information it seeks." Suffice it to note that this court has followed the Government's suggested line of reasoning, and there is no disclosure of the opinions, conclusions

and reasoning of the officials of the sacred decision-making processes of the Internal Revenue Service involved here. The court reviewed the entire file *in camera* and, considering the respective position of the parties and balancing the respective interests with the ever-present effort at and hope for justice, finds there should be disclosure in favor of the taxpayer of all computations and facts revealed objectively in the file but no disclosure of conclusions or opinions reached by various agents of the Internal Revenue Service. *Simons-Eastern Company, supra.* Internal Revenue Agents must, of course, have the appropriate information necessary to make correct decisions; this court recognizes such a need. On the other hand, such a need should not and does not extend so far, nor should the need for confidentiality be broadened, to such an extent as to permit, or reject, denial of due process to a litigant, who is assured by the rules of this court that he will be able to obtain the information necessary to preparation for and the obtaining of a fair trial. See Norlander v. Schleck (D. Minn.1972) 345 F.Supp. 595. See also Crocker v. United States, *supra*. Hopefully, this court has followed, and adhered to the delineation described in ISI Corporation v. United States (D.C.Calif. No. C–71–1899, December 8, 1972), 31 AFTR 2d 73–630.[9]

Having carefully reviewed the issues herein, this court issues its direction that production be followed, or withheld as hereinabove set forth.

Since the documents which are exhibits, and some of which have been made the subject of this proceeding, have been in the possession of several different persons, including the court, and in or to preserve the integrity of the record, the clerk is directed to copy the withheld exhibits and report, seal and mark them, and retain such copies with the record in the case.

Further, the court expressly determines that its decisions herein involve interpretation of issues of law as to which there may be substantial ground for difference of opinion, and an interlocutory appeal might materially advance the ultimate termination of the litigation.

And it is so ordered.

---

9. This court does not have, and has not been furnished the citation for the Federal Supplement.