HOWARD C. PHELPS AND GERALDINE PHELPS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1180–71.   Filed July 15, 1974.

*Towner Leeper*, for the petitioners.

*Daniel A. Taylor, Jr.*, *William A. Goss*, and *Bernard Nelson*, for the respondent.

#### OPINION

FEATHERSTON, *Judge:* Petitioners Howard C. and Geraldine Phelps, husband and wife, seek an order directing respondent to deliver to

---

them "all statements including all transcripts of interviews by either or both" of them during the course of an investigation of their income tax returns. Respondent acknowledges that his agents interviewed one or both of the petitioners on 10 separate occasions between September 21, 1967, and August 6, 1969. He has submitted to the Court for in camera inspection a copy of the memorandum of each such interview, but objects to the delivery to petitioners of all except one of these memoranda, contending that they are not "statements" of a party to this litigation within the meaning of Rule 70(c) of the Tax Court Rules of Practice and Procedure.

The testimony of the special agent and revenue agent who conducted most of the investigation has been presented, describing in detail the procedure followed in conducting the interviews and preparing the memoranda. In the light of that testimony and our examination of the memoranda, we hold the memoranda are statements of parties to this proceeding and must be produced pursuant to Rule 70(c).

Throughout the period in controversy, petitioners operated a loan business in El Paso, Tex. At a time not specified in the record, agents of the Internal Revenue Service commenced an investigation of petitioners' joint Federal income tax returns for their taxable years 1962 through 1965. The purposes of the investigation, headed by a special agent, were to determine whether petitioners had properly reported their income for each of those years and to discover whether they were guilty of violating the criminal fraud provisions of the Internal Revenue Code of 1954.

The special agent and a revenue agent [1] personally interviewed petitioners, jointly or individually, on nine different occasions. On a 10th occasion, the revenue agent interviewed Mrs. Phelps over the telephone. Prior to conducting each of these interviews, the agents prepared an outline of the topics they planned to cover during the interview. Unless petitioners' responses led them into other areas, the scope of their questioning was limited to the topics contained in the outline.

None of these interviews was recorded by stenographic, mechanical, or electrical means. However, during each interview the agents took notes in longhand of petitioners' statements. The purpose of these notes was to get an accurate record of the questions asked petitioners and petitioners' answers to those questions. Although the agents did not write down every word petitioners said, they made notes reflecting the substance of petitioners' statements and occasionally quoted a phrase used by one of the petitioners if that was the most descriptive way of stating the response or if the agent did not understand

---

[1] The revenue agent was not present at the last two personal interviews with Mrs. Phelps. In the first of these two interviews, the special agent was joined by a group supervisor of the Intelligence Division, and in the second by an official from the Inspection Division.

the precise meaning of the phrase. The agents recorded only matters which they considered pertinent to their investigation; they did not note discussions of the weather and similar pleasantries exchanged during the interviews.

In accordance with their supervisors' instructions, the agents prepared a memorandum as soon as practical after each interview was held. Following each of the nine personal interviews, the agents met and reviewed their notes for completeness and accuracy. This meeting usually took place on the same day the interview was conducted or the next day. Immediately, the special agent dictated a draft memorandum of the interview.[2] The recording of his dictation was sent to San Antonio, Tex., where the draft was typed. After the agents received the draft, they edited it—based on their notes and recollections of the interview—and returned it to San Antonio to be retyped. When the agents received that version of the memorandum, they reviewed it again to make sure it accurately reflected the discussion that had occurred during the interview, signed the memorandum, and inserted it in the files. When no further changes were necessary, the agents destroyed their notes of the interview and the rough drafts of the memorandum.

The memorandum of a telephone interview of Mrs. Phelps on April 9, 1968, was drafted by the revenue agent who conducted the interview. He wrote the memorandum in longhand following the interview and had it typed in El Paso, Tex. In other respects the telephone interview and the preparation of the memorandum relating thereto were handled in the same manner as the others.

Although they do not quote petitioners' responses to the agents' questions word for word, the memoranda accurately reflect what petitioners said and were not merely selected portions of their responses. Petitioners' answers are carefully recorded in the memoranda, even in those cases where the agents felt those responses were contradicted by other information the agents possessed. The memoranda do not contain information which was not brought out during the interviews. The agents avoided putting their personal impressions in the memoranda because they thought this would destroy the purpose of writing the memoranda, i.e., to provide a permanent record of what petitioners said during the interviews. The memoranda were to be used by the agents' supervisors to review the case for a possible criminal proceeding and, in the event criminal charges were subsequently brought against petitioners, the agents could use the memoranda to show "specifically" what petitioners had said in each of the interviews. However, no such proceeding has been instituted.

---

[2] In the case of the Aug. 6, 1969, interview, the special agent relied on his own notes.

Petitioners were not represented by counsel at any of these interviews, and petitioners did not sign any of the memoranda. However, the memorandum of the March 20, 1968, interview was shown to Mrs. Phelps during a meeting on September 27, 1968, which she and her husband attended, and she acknowledged that it correctly reflected her comments during the earlier interview. This was the only memorandum shown to petitioners, and respondent has produced it and made it available to petitioners.

Respondent maintains, as noted above, that petitioners are not entitled to copies of the nine memoranda in question because they are not a "Party's Statements" as that term is used in Rule 70(c). Respondent further argues that, since the nine memoranda are not a party's statements, they are not otherwise subject to discovery under Rule 72, Tax Court Rules of Practice and Procedure, on the ground that "they constitute material prepared in anticipation of litigation, and they contain the agents' mental impressions and conclusions." [3]

Rule 70(b), Tax Court Rules of Practice and Procedure, defines the scope of discovery allowable under Rules 71 (interrogatories), 72 (production of documents and things), and 73 (examination by transferees). It limits discovery to "any matter not privileged and which is relevant to the subject matter involved in the pending case." This limitation, however, does not apply in the case of "statements" by a party to the litigation. As to such statements, Rule 70(c) reads as follows:

(c) Party's Statements: Upon request to the other party and without any showing except the assertion in writing that he lacks and has no convenient means of obtaining a copy of a statement made by him, a party shall be entitled to obtain a copy of any such statement which has a bearing on the subject matter of the case and is in the possession or control of another party to the case.

The note accompanying Rule 70(c) (60 T.C. 1098–1099) explains that this rule was derived from rule 26(b)(3) of the Federal Rules of Civil Procedure, which contains the following definition of the term "statement":

For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

This definition was adapted from the Jencks Act, 18 U.S.C. sec. 3500

---

[3] Since we have concluded that the memoranda in dispute are producible under Rule 70(c), we need not consider respondent's arguments under the general provisions of Rule 72.

(e),[4] and the parties agree that the decisions interpreting that Act are helpful in resolving the present dispute.

Petitioners acknowledge that they did not sign or otherwise adopt or approve any of the nine memoranda remaining in question, and, therefore, the memoranda do not fall within clause (A) of the foregoing definition. Since the memoranda were not stenographic, electrical, or mechanical recordings of the interviews, the issue is a narrow one: Whether the memoranda qualify as statements on the ground that, within the meaning of clause (B) of the definition, each of them is an "other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement" made by petitioners during the interviews. We think they are.

It is clear that the term "other recording" was "meant to encompass more than mere automatic reproductions of oral statements." *Palermo* v. *United States*, 360 U.S. 343, 352 (1959). The term includes a manual as well as a mechanical recording, *United States* v. *Waldman*, 159 F. Supp. 747, 749 (D. N.J. 1958), and the recording may be the original or a transcription thereof, *United States* v. *McKeever*, 271 F. 2d 669, 674–675 (C.A. 2, 1959). The term "substantially verbatim" does not mean "precisely verbatim." *United States* v. *McKeever, supra* at 675; *Williams* v. *United States*, 338 F. 2d 286, 288 (C.A. D.C. 1964). The important consideration is that the statement "fairly be deemed to reflect fully and without distortion what * * * [was] said to the government agent[s]." *Palermo* v. *United States, supra* at 352.

The extreme care taken by the agents to assure the accuracy and completeness of the memoranda—the advance preparation of topic outlines, the taking of careful notes, the comparison of their notes, the prompt dictation of the interview memoranda, the careful reading and comparison of the draft memoranda with their notes, the exclusion of extraneous matter, and the inclusion of all pertinent material covered by the interviews—brings the memoranda within the foregoing definition of a statement. The agents' testimony shows that the memoranda do not rest on their memories, are not based on selected segments of the interviews, and do not reflect in any significant way the agents' interpretations or impressions. Compare *Palermo* v. *United States, supra* at 352–353. Indeed, the special agent testified that care was taken to assure the accuracy of the memoranda so that, in a subse-

---

[4] See the Advisory Committee's note to rule 26(b)(3), F.R.C.P., 43 F.R.D. 487, 502–503. The Jencks Act, 18 U.S.C. sec. 3500(e), defines a witness' statement as follows:

(1) A written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

quent criminal proceeding, "we could state specifically what * * * [petitioners] told us." Based on the agents' testimony, which we find credible, we think the memoranda are transcriptions of substantially verbatim recitals of petitioners' oral statements and should be produced. *Papworth* v. *United States*, 256 F. 2d 125, 129–130 (C.A. 5, 1958), certiorari denied 358 U.S. 854 (1958), rehearing denied 358 U.S. 914 (1958); *United States* v. *McKeever, supra* at 674; *Williams* v. *United States, supra* at 288–289; *United States* v. *Waldman, supra* at 749; *Brown* v. *United States*, 58 F.R.D. 599, 604 (D. S.C. 1973). See and compare *United States* v. *Augenblick*, 393 U.S. 348, 354–355 (1969); *United States* v. *Blackburn*, 446 F. 2d 1089, 1090 (C.A. 5, 1971), certiorari denied 404 U.S. 1017 (1972).

As further support for our conclusion, we point out that the rationale for treating a party's own statement differently from that of another witness is that the discovery rules are aimed at permitting all admissible evidence to be discovered. *Hickman* v. *Taylor*, 329 U.S. 495, 515 (1947) (concurring opinion). Given a proper predicate the memoranda themselves constitute substantive evidence. *Asaro* v. *Parisi*, 297 F. 2d 859, 863 (C.A. 1, 1962); *Ettelson* v. *Metropolitan Life Ins. Co.*, 164 F. 2d 660, 667 (C.A. 3, 1947); *Dingler* v. *Halcyon Lijn N.V.*, 50 F.R.D. 211, 213 (E.D. Pa. 1970); *Belback* v. *Wilson Freight Forwarding Co.*, 40 F.R.D. 16, 18 (W.D. Pa. 1966).[5] We do not think the ends of justice would be served by forcing petitioners, who were not represented by counsel at any of the interviews, to go to trial without their attorneys having advance knowledge of this substantive evidence.

Alternatively, if the Court should order the nine memoranda to be furnished to petitioners, respondent requests a delay until such time as respondent may serve interrogatories and requests for admissions on petitioners and receive responses thereto. We recognize the propriety of such a request in certain cases. See Rule 70(b), Tax

---

[5] The following excerpt from the Advisory Committee's note to rule 26(b)(3), F.R.C.P., 48 F.R.D. 487, 502–503, is instructive:

"Courts which treat a party's statement as though it were that of any witness overlook the fact that the party's statement is, without more, admissible in evidence. Ordinarily, a party gives a statement without insisting on a copy because he does not yet have a lawyer and does not understand the legal consequences of his actions. Thus, the statement is given at a time when he functions at a disadvantage. Discrepancies between his trial testimony and earlier statement may result from lapse of memory or ordinary inaccuracy; a written statement produced for the first time at trial may give such discrepancies a prominence which they do not deserve. * * *

"Commentators strongly support the view that a party be able to secure his statement without a showing. 4 *Moore's Federal Practice* ¶26.23 [8.4] (2d ed. 1966); 2A Barron & Holtzoff, *Federal Practice and Procedure* § 652.3 (Wright ed. 1961); see also Note, *Developments in the Law—Discovery*, 74 Harv. L. Rev. 940, 1039 (1961). The following states have by statute or rule taken the same position: *Statutes:* Fla. Stat. Ann. § 92.33; Ga. Code Ann. § 38–2109(b); La. Stat. Ann. R.S. 13:3732; Mass. Gen. Laws Ann. c. 271, § 44; Minn. Stat. Ann. § 602.01; N.Y.C.P.L.R. § 3101(e). *Rules:* Mo. R.C.P. 56.01(a); N. Dak. R.C.P. 34(b); Wyo. R.C.P. 34(b); cf. Mich. G.C.R. 306.2."

Court Rules of Practice and Procedure.[6] However, in the instant case, we deny that request.

Taking answers to interrogatories submitted to petitioners on the numerous details, dates, individual checks, pawn tickets, and the like, referred to in the various memoranda, would no doubt produce some inconsistencies with the interview memoranda. Petitioners' testimony at the trial also may differ in some respects from both the memoranda and such answers to interrogatories. The result could well be that these inconsistencies would be so magnified as to impede the search for truth, and the trial would be concerned too much with inconsistencies of peripheral details rather than with the heart of the issue. It is no answer to say that a party who has told the truth in giving his statement can repeat the truth in answering the interrogatories. Even the most honest person may forget details with the passage of time, and adding another possible source of inconsistencies would likely give such discrepancies a prominence which they do not deserve.

We hold that the memoranda of interviews should be produced forthwith.

*An appropriate order will be entered.*

---

[6] Rule 70(b) of the Rules of Practice and Procedure of this Court contains the following: "the Court may order that the information or response sought need not be furnished or made until some designated time or a particular stage has been reached in the case or until a specified step has been taken by a party."