**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Armando LACA, Jose H. Villanueva, and Ricardo Yanez, Defendants-Appellants.**

**No. 73-3342.**

United States Court of Appeals, Fifth Circuit.

Aug. 28, 1974.

923

Victor R. Arditti, El Paso, Tex. (Court-appointed), for Yanez.

Sid Abraham, Anthony C. Aguilar, El Paso, Tex. (Court-appointed), for Laca.

Alice Dwyer, El Paso, Tex. (Court-appointed), for Villanueva.

William Sessions, U. S. Atty., San Antonio, Tex., Ronald R. Ederer, Asst. U. S. Atty., El Paso Tex., for plaintiff-appellee.

Before TUTTLE, COLEMAN and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

These are consolidated appeals (a) from defendants Laca, Villanueva and Yanez's convictions under count 1 for violation of 21 U.S.C.A. § 846 by conspiring to possess approximately 256 pounds of marijuana with intent to distribute the same contrary to 21 U.S.C.A. § 841(a)(1), and under count 2 for violation of 21 U.S.C.A. § 841(a)(1) by knowingly and intentionally possessing marijuana with intent to distribute, (b) from defendants Villanueva and Yanez's convictions under count 3 for violation of 18 U.S.C.A. § 924(c) by carrying a firearm during the commission of a crime, and (c) from defendant Villanueva's conviction under count 4 for knowingly possessing a firearm which had not been registered with the Secretary of the Treasury as required by 26 U.S.C.A. § 5841. After a joint trial, the jury returned a verdict of guilty on all counts as to all defendants.

Each defendant alleges numerous errors; however, we find that the majority of these problems were properly handled by the district court and that only the sentencing and the joinder issues raise questions sufficiently substantial to require discussion. We affirm the convictions, but remand for a resentencing in accordance with principles announted in this opinion.

The facts for purposes of analyzing these two issues may be briefly stated. On June 21, 1973, around 1:00 a. m. Officer Castro received a call from a confidential informant who stated that a "load of marijuana was being held at 805 Raynolds, in the garage, and that

subjects were in the process of loading a vehicle and that the vehicle was backed up to the garage in the driveway." Castro went to the back yard of 801 Raynolds, next door to 805, and observed the three defendants loading large sacks with "Mexican writing" on them into the trunk of a red car. The red car left and Yanez backed a white Ford into the driveway to the garage area. Castro testified the three defendants then began loading large white sacks into the white Ford. At this time Castro left to join other patrolmen nearby. They returned to 805 Raynolds and ran towards the garage area. Officer Calanche testified that Laca, who was standing beside the white Ford, ran to the back of the house and then into the house, where he and Sgt. Chavez apprehended Laca. Castro encountered Yanez and Villanueva in the white Ford. Passenger Villanueva pointed a shotgun at him, but Castro grabbed driver Yanez by the hair and placed him between himself and Villanueva. Castro ordered Villanueva to drop the gun which he did, and both Yanez and Villanueva were arrested. Bags of marijuana were found in the white Ford and in the garage, but the red car was never located.

## I. SEVERANCE MOTION

The first question is whether the joinder of defendant Laca, only charged with drug offenses, with his co-defendants, who were additionally charged with gun violations, constituted either (1) a misjoinder under Rule 8(b) or, alternatively (2) an abuse of discretion requiring reversal under Rule 14. Rule 8(b) provides:

". . . (b) *Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the

defendants need not be charged in each count."

As aptly noted by one commentator, "[n]one of the Federal Rules has given rise to so much misunderstanding; yet few of the Rules are so vital. . . . Few will deny that there is a positive correlation between the number of defendants and offenses cumulated within a single trial, and the likelihood of conviction." 8 Moore's Federal Practice § 8.02 [1], p. 8–2 (2d ed. 1973). Misjoinder under Rule 8 is an issue of law. In this respect it is unlike prejudicial joinder under Rule 14, which raises only the issue whether the trial judge abused his discretion. Tillman v. United States, 406 F.2d 930, 933 n. 5 (5th Cir.), vacated as to one defendant on other grounds, 395 U.S. 830, 89 S.Ct. 2143, 23 L.Ed.2d 742 (1969). "Whether there has been a misjoinder in a trial involving multiple defendants is governed by Rule 8(b); Rule 8(a) has no application in such instances." United States v. Bova, 493 F.2d 33, 35 (5th Cir. 1974).

 It is clear that there is no misjoinder simply because one defendant is not charged in each count of the indictment since Rule 8(b) clearly states that "all of the defendants need not be charged in each count." Even though the defendants need not be charged in each count, the defendants must "have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. . . ." Thus if the defendants' acts are a part of a series of transactions, it is not necessary under Rule 8(b) that all the defendants be charged in the same count or that the evidence show that each defendant participated in precisely the same act. See Kivette v. United States, 230 F.2d 749, 753 (5th Cir. 1956). It must only be shown that each act or transaction was part of "a series of acts or transactions" and that each defendant participated in the series of transactions. Here, the requisite close connection clearly existed between the acts to constitute "a series of acts or transactions," as the violations occurred at the *same time, place and occasion.* Therefore, since the gun violations and the drug charges were in "a series of acts or transactions" in which series all three defendants participated, Rule 8(b) permits joinder of the defendants in one indictment.[1]

 Having found that there was no misjoinder of defendants under Rule 8(b), it is still necessary to determine whether there was sufficient prejudice to require a severance under Rule 14, which states in relevant part, that:

> "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires."

"The existence of prejudice, in large measure, depends upon the facts and circumstances of each case," and "it is axiomatic that the granting of a severance is within the discretion of the trial judge." *E. g.,* Tillman v. United States, *supra,* 406 F.2d at 934. The burden of demonstrating prejudice is a difficult

---

1. *See* Scheve v. United States, 87 U.S.App. D.C. 289, 184 F.2d 695 (1950), where the court held that the joinder of an assault charge against defendant A with gambling violations against defendants A, B and C was proper due to the nexus between the offenses. *See also* Kivette v. United States, 230 F.2d 749 (5th Cir. 1956) citing *Scheve, supra.* However, when the link between the offenses is insufficient, joinder is improper. United States v. Bova, supra, held that the joinder of unrelated, but similar, charges was impermissible under Rule 8(b).

The two decisions relied upon by appellant Laca, Chubet v. United States, 414 F.2d 1018, 1020 (8th Cir. 1969) and United States v. Eagleston, 417 F.2d 11, 14 (10th Cir. 1969), are inapplicable because in the former "the information neither alleged that the transactions were *connected* nor that they were common to a conspiracy," and, in the latter, the offenses were "totally *unconnected.*"

one, and the ruling of the trial court will rarely be disturbed on review. *Id.*

Appellant Laca claims he was prejudiced by joinder with his co-defendants, both of whom were charged with more serious offenses, violations of the Gun Control Act of 1968. Secondly, Laca asserts that the trial court compounded this prejudice by refusing to give limiting instruction regarding the gun offenses:

"Mr. Ederer: We have a charge limiting consideration by the jury of the firearm concerning the Defendant, MR. LACA. That would be just for the record.

The Court: To do what?

Mr. Ederer: Concerning MR. LACA, as far as instructions to the jury to limit their consideration of the shotgun toward the other Defendants, since he is not charged with it.

The Court: I am not going to put any limitations on it. I think the Government should have had them all included in the same offense. I think the jury is entitled to consider it all."

Although this instruction was refused, the government points out that the instruction that was given by the court distinctly set out that only two of the defendants were charged with the possession of the shot gun and that only one defendant was charged with registration violations, and, as to this, the court stated at page 271 of the transcript:

". . . so, you will have to consider each count as to each defendant, and vote on them separately and enter your finding."

Again on page 280, the court specifically set forth each count of the indictment and who was charged in each count.

The recent decision by this Court in United States v. Hamilton, 492 F.2d 1110 (5th Cir. 1974), indicates that this type of joinder accompanied by careful and clear instructions would not be an abuse of discretion under Rule 14. There, the indictment charged in count one Robert Hamilton, Edward Hamilton and Clarence Brantley with stealing government property and charged in count two Robert Hamilton and Clarence Brantley with willfully and maliciously setting fire to an occupied government building. Edward Hamilton asserted that his defense was unnecessarily prejudiced by a joint trial with the other defendants who had been charged additionally with arson. Finding no abuse of discretion, this Court stated:

"Edward Hamilton was charged with the theft of government property along with the other two appellants. His conviction arose out of the same series of transactions which resulted in the indictment of the other appellants. The trial court gave careful and clear instructions which allowed the jury to separate the theft charges from the arson charges. United States v. Ayres, 434 F.2d 60 (5th Cir. 1970). A district court's refusal to grant severance will be reversed on appeal only when it is established that the court has clearly abused its discretion."

Joinder queries ultimately involve a balancing of the public interest in avoiding a multiplicity of litigation and the defendant's interest in obtaining a fair trial. As earlier noted, the mere joinder of any offense to that for which a defendant is charged is potentially prejudicial, and the prejudice of joinder in this situation is compounded where the defendants are not charged in each count of the indictment, but moreover are charged with *distinct*, albeit related, offenses. Here, where the interest in avoiding double proof was clearly facilitated since the violations occurred exactly at the same time and place, where the proof was short and not complex so that the jury could reasonably be expected to compartmentalize the evidence as it related to the separate defendants, and where there was no disparity in the gravity of the offenses, we cannot find a clear abuse of discretion. More importantly, although the requested charge by Laca's counsel, Mr. Ederer, was denied,

the instructions actually given by the court did sufficiently segregate the offenses and the defendants, so that an intelligent verdict could be rendered.

## II. SENTENCING

The district court assessed punishment as follows: (1) Laca, five years on each of the two counts, to run consecutively, totalling ten years, and a five year special parole term; (2) Yanez, five years on each of the three counts to run consecutively, totalling fifteen years, and a five year special parole term; (3) Villanueva, five years on each of the four counts, with the sentences on counts 1, 2 and 3 to run consecutively, and the sentence on count 4 to run concurrently with count 3, totalling fifteen years, and a five years special parole. All three defendants were proper subjects for sentencing under the Youth Corrections Act. The appellants do not challenge the sentencing on the basis that the court arbitrarily gave the maximum sentence on the drug charges. Rather the appellants assert that the sentencing court committed error (1) by refusing to give an affirmative *finding* why these appellants would not derive benefit from treatment pursuant to the Youth Corrections Act, and (2) by improperly predicating the length of the sentences on whether the defendants had shown an "inclination toward repentance."

The sentencing court stated:

"This is a very serious offense with very aggravated circumstances. You jeopardized not only your lives, but the lives of these officers. This was in a regular gangster style that this was put on. *None of you have shown any inclination toward repentance* or trying to cooperate with the authorities to clear up any of these matters.

". . . The attorneys can file motions for reduction and if your attitude changes and if you try to clear up these matters the Court can re-consider, but at this time I have no intention of re-considering this sentence because, as I said, it is very aggravat-

ed and *there is no showing of any repentance on the part of any of you*. It is an organized effort on your part to disobey the law in a very aggravated way." (Emphasis supplied).

### A. *Fifth Amendment Violations*

The above quotation clearly reflects that the court based the sentences in part on the fact that the defendants had not shown "any inclination toward repentance." The phraseology "inclination towards repentance" cannot be construed to merely mean cooperating with the authorities, since that condition is expressly stated in the quotation. "Repentance" used in the context of these comments cannot be read in any way but to mean confession. It is clear that the court took into account in sentencing that these defendants had pleaded not guilty, were convicted, and still refused to confess or repent of their crimes.

We reaffirm the principle prohibiting the substitution of an appellate court's predilections for the broad discretion rightfully reposed in the trial court. However, by opining that these defendants had not shown an inclination towards repentance, the court erred by predicating the length of these sentences on whether the defendants had confessed their crimes. This conditioning of sentences on defendants' confessions violated their right to avoid self-incrimination under the Fifth Amendment. We rely on this Court's decision in Thomas v. United States, 368 F.2d 941 (5th Cir. 1966), and the District of Columbia Court of Appeals opinion in Scott v. United States, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969), which followed and cited our *Thomas* decision, for the principle that a defendant's Fifth Amendment privilege against self-incrimination is violated where a sentencing court takes into consideration a defendant's refusal to confess after a not guilty plea. *Cf.* Williams v. United States, 273 F.2d 469 (10th Cir. 1969). As announced by the *Thomas* court, *supra*, 368 F.2d at 945:

"[i]t must be remembered that at the time of his allocution, Thomas had

not been finally and irrevocably adjudged guilty. Still open to him were the processes of motion for new trial (including the opportunity to discover new evidence), appeal, petition for certiorari and collateral attack."

 We note the decision in United States v. Moore, 427 F.2d 38 (5th Cir. 1970), in which this Court under circumstances similar to *Thomas* did not find the violation of the principle established in *Thomas,* because the district court imposed only a thirteen month sentence where it could have assessed consecutive sentences totalling fifty years. The *Moore* court viewed the case differently from *Thomas* "[s]ince the sentence imposed was a mere fraction of that authorized." *Id.* at 42. The opinion in *Moore* does not undermine the reversal here, but in fact supports it since the defendants were given the maximum imprisonment on the drug charges to run consecutively,[2] and substantial imprisonment on the gun violations. The sentences here were certainly not a "mere fraction of that authorized" as in *Moore.*

### B. *Youth Corrections Act*

Appellants Yanez and Villanueva assert that the district court did not consider the option of sentencing them under the federal Youth Corrections Act, 18 U.S.C., § 5010, and that it was required to make an explicit finding that the defendants would *not* benefit from youth treatment as a condition precedent to sentencing eligible offenders as adults. The Supreme Court has only recently prescribed the procedure in such instances, Dorszynski v. United States, —— U.S. ——, 94 S.Ct. 3042, 41 L.Ed.2d

855. For the reasons already stated, we have concluded that these appellants must be resentenced. The District Judge who originally imposed sentence is now deceased. The Judge upon whom the duty will now devolve will have the benefit of *Dorszynski,* so we see no necessity for further comment on that issue at this point.

The convictions are affirmed.

The sentences are vacated and the cases are remanded for further proceedings not inconsistent with this opinion.

---

2. The penalty for violating 21 U.S.C.A. § 846, by conspiring to possess marijuana with intent to distribute the same contrary to 21 U.S.C.A. § 841(a)(1), is: "Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense . . ." The penalty for a violation under 21 U.S.C.A. § 841 is: ". . . (B) in the case of a controlled substance in schedule I or II which is not a narcotic drug or in the case of any controlled substance in schedule III, such person shall be sentenced to a term of imprisonment of not more than 5 years, a fine of not more than $15,000, or both." The penalty for an initial violation under 18 U.S.C.A. § 924(c) is "not less than one year nor more than ten years." The penalty for violating 26 U.S.C.A. § 5841 is not more than ten years, or $10,000 fine, or both, as provided in 26 U.S.C.A. § 5871.