**The UNITED STATES of America**

v.

**OLIN CORPORATION, Wilburt Kleiber, Calvin Schmiege and Thomas Broad, Defendants.**

**No. CR–78–38.**

United States District Court, W. D. New York.

Feb. 20, 1979.

Richard J. Arcara, U. S. Atty., W.D.N.Y., Buffalo, N. Y. (Edward J. Wagner, Asst. U. S. Atty., Buffalo, N. Y., Paul M. Kaplow, Atty., Dept. of Justice, Washington, D. C., of counsel), for plaintiff.

Herald Price Fahringer, Buffalo, N. Y., for Olin.

Joseph D. Bermingham, Jr., Buffalo, N. Y., for Kleiber.

Stanley Grossman, Niagara Falls, N. Y., for Schmiege.

Joseph V. Sedita, Buffalo, N. Y., for Broad.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Olin Corporation ("Olin") filed September 14, 1978 its omnibus motion which comprises twenty-one separate motions. Oral argument was held October 27, 1978. Defendant Kleiber filed a motion stating that he joined in the motions of Olin wherever applicable. Defendants Broad and Schmiege, through their respective attorneys, stated at oral argument on the omnibus motion that they also joined in the motion where applicable. The Government opposes all the motions.

There are twenty-eight counts in the Indictment. Count I charges defendants Broad, Kleiber and Schmiege with conspiracy to defraud the United States and its departments and agencies in violation of 18 U.S.C. § 371.[1] Counts II through XXI charge defendants Olin, Kleiber and Schmiege with making false statements and making and using false writings knowing the same to contain false statements in violation of 18 U.S.C. § 1001.[2] Defendants

---

1. Olin is not charged in Count I; therefore such count is relevant only to Olin's motion for severance.

2. Count II, a typical 18 U.S.C. § 1001 count, states:

"That from on or about September 21, 1970, until on or about June 21, 1975, defendant OLIN CORPORATION was, by reason of the stipulation approved by the Court and entered in *United States v. Olin Corporation* (Civil Action No. 1970–338, W.D.N.Y.), required to measure daily the mercury content of its discharges to the Niagara River and to report same weekly to the United States Environmental Protection Agency.

"That defendants hereinafter specified did, at Niagara Falls, in the Western District of New York, knowingly and willfully make false, fictitious and fraudulent statements and representations and did make and use a false writing, knowing the same to contain false, fictitious,

Kleiber and Schmiege are charged in counts II through XXI and defendants Olin, Kleiber and Schmiege are charged in counts IX through XXI. Counts XXII through XXVIII charge defendants with making false statements in reports filed with the Environmental Protection Agency ("the EPA"), in violation of 33 U.S.C. § 1319(c)(2).[3] Defendants Olin, Schmiege and Broad are charged in all such counts and defendant Kleiber is named in counts XXII, XXV and XXVI.

The motions will be discussed seriatim.

### Prosecutorial Vindictiveness

■ Olin seeks dismissal of the Indictment based on the alleged vindictiveness of the Government. It argues that the filing of the Indictment after Olin had fully cooperated with the Government suggests vindictiveness or at least the appearance of vindictiveness on the part of the Government. Olin also argues that the interests of justice require dismissal.

According to Olin, an Assistant United States Attorney told Olin's counsel that Olin would not be indicted if the evidence showed that knowledge of the misreporting was limited to Niagara Falls plant personnel. The Government denies that such a promise was made to Olin. According to the Government, Olin was told that its "decision not to contest the Grand Jury subpoenas issued for its witnesses and its documents, as well as their prompt presentation, would be considered in deciding what charges to bring." (Government's brief at 4.) The Government states that Olin was not charged in the conspiracy count and in seven of the felony counts purely as a matter of prosecutorial discretion. In addition, the Government disputes Olin's contention that there is no evidence of bad faith on the part of corporate officials outside the Niagara Falls plant.

Olin cites several cases in support of its contention that the Government should not be allowed to indict a defendant who has fully cooperated with the Government. At pages 4 and 5 of its brief, Olin sets forth what it describes as the common spirit of the cited cases: "Courts will not permit the Government to lull a defendant into a false sense of security by encouraging its full cooperation and then, after it has received full disclosure, indict the defendant almost

and fraudulent statements and entries for submission to the United States Environmental Protection Agency. To wit: On or about May 14, 1973, defendants KLEIBER and SCHMIEGE reported to EPA that on May 13, 1973, the OLIN Niagara Falls plant had discharged 0.08 pound of mercury to the Niagara River. Records of OLIN CORPORATION show that the actual mercury discharge for said day had been approximately 32.24 pounds, all of the foregoing being in violation of Title 18, United States Code, Section 1001."

**3.** Count XXII, a typical 33 U.S.C. § 1319(c)(2) count, states:

"That on December 13, 1974, EPA, pursuant to the Federal Water Pollution Control Act, 33 United States Code, Section 1251, et seq., issued a permit to defendant OLIN for its Niagara Falls plant, which permit became effective January 31, 1975, and required OLIN to measure its mercury discharges from certain designated outfalls to the Niagara River on a weekly basis and to report results to EPA every three months. The permit allowed OLIN a maximum total discharge of 0.2 pound of mercury per day from Niagara plant outfalls designed [sic] by OLIN as 1CW, 3CW and 4CW. Defendant OLIN, over the signature of WILBURT KLEIB-

ER, OLIN's designated agent for reporting to United States officials, submitted mercury discharge reports on required forms containing the following certification next to the signature line:

I certify that I am familiar with the information contained in this report and that to the best of my knowledge and belief such information is true, complete and accurate.

"That defendants hereinafter specified did, at Niagara Falls, in the Western District of New York, knowingly make a false statement, representation, and certification in a report filed with the United States Environmental Protection Agency pursuant to the provisions of Title 33 U.S.C. 1314(h). TO WIT: On or about August 28, 1975, the defendants OLIN, KLEIBER, SCHMIEGE, and BROAD knowingly made a report for the period beginning on or about May 1, 1975, through on or about July 31, 1975, stating that the maximum discharge from OLIN's permitted outfalls at the Niagara Falls plant had been 0.137 pound per day. In truth and in fact, OLIN's records show that the maximum mercury discharge for said period had been approximately 28.05 pounds, all of the foregoing in violation of Title 33, United States Code, Section 1319(c)(2)."

as if it had never cooperated." This description of the case law is highly inaccurate. The holding in each of the cited cases [4] is that due process is violated when a defendant is retaliated against or it appears that a defendant is being retaliated against for the exercise of said defendant's constitutional or statutory rights. There is no indication that the Government's decision to indict Olin was motivated by Olin's intent to exercise a constitutional or statutory right. Olin has not cited any case supporting its argument that cooperation by a prospective defendant deprives the Government of the right to indict her, him or it.

Undoubtedly many of Olin's arguments concerning its cooperation and the lack of bad faith on the part of corporate officials outside the Niagara Falls plant will be argued to the jury in order to negate the element of intent. Presently, there are not enough facts in the record for me to resolve these issues and they are best left to the trier of fact.

Neither the interests of justice nor the doctrine of "manifest vindictiveness" requires dismissal. Therefore, Olin's motion for dismissal on such grounds is denied.

### Failure to Present Favorable Evidence to the Grand Jury

Olin alleges that the prosecution failed to provide exculpatory materials to the grand jury and that such omission warrants either dismissal of the Indictment or an investigation by the court. At pages 25 through 27 of its motion, Olin lists some of the "evidence" it believes should have been brought

to the attention of the grand jury. The first three items are presentations prepared by Miller, Cassidy, Larroca and Lewin, the law firm representing Olin at the time of the grand jury proceedings. In addition, Olin refers to statements made by some of its employees that it contends should have been affirmatively placed on the record. Other items of "evidence" also are listed as being exculpatory. Olin further complains of the prosecutor's failure to notify it of the date the grand jury was to vote on whether to indict Olin, arguing that such failure deprived Olin of an opportunity to specifically request the presentation of the cited "evidence".

The Government maintains that Olin never requested its attorneys' presentation to be brought to the grand jury's attention, that the statements cited by Olin were presented to the grand jury and that some of the "evidence" is irrelevant to the case. In addition, the Government states that Olin had been notified on several occasions of the date the grand jury was to vote, but that the dates were postponed due to Olin's discussions with the Assistant Attorney General for the Land and Natural Resources Division of the Justice Department. Olin has not contradicted the Government's assertion that the statements cited at page 26 of its motion were presented to the grand jury, as opposed to being affirmatively placed on the record.

■ A prosecutor has a duty to present to a grand jury evidence which clearly negates guilt.[5] *United States v. Phillips Pe-*

4. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Groves*, 571 F.2d 450 (9th Cir. 1978); *United States v. DeMarco*, 550 F.2d 1224 (9th Cir. 1977); *Midgett v. McClelland*, 547 F.2d 1194 (4th Cir. 1977); *Hayes v. Cowan*, 547 F.2d 42 (6th Cir. 1976); *United States v. Johnson*, 537 F.2d 1170 (4th Cir. 1976).

5. The facts in the cases cited by Olin are distinguishable from those in the instant case. *United States v. DeMarco*, 407 F.Supp. 107 (C.D. Cal.1975), did not involve dismissal of an indictment due to the prosecutor's failure to provide exculpatory materials to a grand jury; the

prosecutor had failed to comply with the court's discovery order and had not turned over all *Brady* materials to the defendant. In *United States v. Gallo*, 394 F.Supp. 310 (D.Conn.1975) the prosecutor failed to inform a grand jury that the transcripts of a witness's testimony given to a prior grand jury constituted hearsay evidence, that such witness was available for live testimony and that the transcripts were "permeated with perjurious statements as to crucial, material events." *United States v. Gallo, supra*, at 315. In addition, the prosecutor had failed to provide the second grand jury with a complete record of the proceedings before the first grand jury. Both *People v. Seward*, 51 Misc.2d 415, 273 N.Y.S.2d 306 (Rock-

*troleum Co.*, 435 F.Supp. 610 (N.D.Okl. 1977); *United States v. Mandel*, 415 F.Supp. 1033 (D.Md.1976). However, the prosecutor is not obliged to sift through all the evidence to find statements or documents that might be exculpatory. *Loraine v. United States*, 396 F.2d 335 (9th Cir.), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968); *United States v. Mandel, supra.* The prosecutor does not have a duty to present defendant's version of the facts.

■ There is no evidence of prosecutorial misconduct or of a violation of Olin's constitutional rights. The "evidence" cited by Olin does not clearly negate guilt. Neither dismissal of the Indictment nor a further investigation of this matter is warranted. Therefore, defendant's motion to dismiss for failure to present favorable evidence to the grand jury or for an investigation is denied.

### Grand Jury Leaks

■ Olin contends that information provided to the grand jury was leaked to the press. It cites an article published in the New York Times indicating that approximately thirty-eight tons of mercury had been discharged to the Niagara River by Olin. The Government responds that the grand jury was never given such an estimate of the mercury discharge and that the only person given the figure of thirty-eight tons was Nathan Lewin, counsel for Olin.

The Government's uncontested response satisfies me that there was no prosecutorial misconduct in this regard. Olin's motion for dismissal on the basis of grand jury leaks is denied.

### Severance

On January 15, 1979 all counsel were present in court to set a date for trial. At that time, I stated on the record that Olin's motion for severance was denied. The following constitutes my memorandum on such motion.

Olin claims that the Government has improperly joined Olin with the other defendants and that the counts alleging violations of 18 U.S.C. § 1001 have been improperly joined with the counts alleging violations of 33 U.S.C. § 1319(c)(2). Olin alternatively argues that, even if joinder were proper under either Fed.R.Crim.P. rule 8(a) or 8(b), it will be prejudiced by the joinder because the jury will not be able to segregate the evidence as to each defendant; in particular, evidence will be admitted on the conspiracy count that would be inadmissible in a separate trial of Olin. Further, it is claimed that the individual defendants have defenses that are antagonistic to that of Olin. Defendant Olin also argues that a *Bruton* problem may present itself during the course of trial. The Government argues that rule 8(a) is not applicable when there has been a joinder of defendants. It also urges that joinder under rule 8(b) was proper. In addition, the Government con-

land Co.Ct.1966), and *People v. Rosen*, 74 N.Y. S.2d 624 (Kings Co.Ct.1947), involved a defendant's right under New York's law to appear before a grand jury. In both cases the grand jury proceedings postdated preliminary hearings at which charges against each defendant had been dismissed, primarily as a result of the defendant's testimony. The prosecutors failed to inform defendants of the grand jury proceedings, thereby depriving them of an opportunity to assert their statutory rights. *Johnson v. Superior Court of San Joaquin County*, 15 Cal.3d 248, 124 Cal.Rptr. 32, 539 P.2d 792 (1975), involved the prosecutor's duty under California's law to inform the grand jury of evidence reasonably tending to negate guilt. The prosecutor did not inform the grand jury that the defendant's testimony at a preliminary hearing had led the magistrate to dismiss the

complaint. Under California's law the grand jury could order the production of evidence that would explain away the charge. The prosecutor in *People v. Ferrara*, 82 Misc.2d 270, 370 N.Y.S.2d 356 (Nassau Co.Ct.1975), had presented exculpatory evidence to the grand jury but had failed to charge the grand jury on the existence of an affirmative defense, thereby leaving the jurors unaware of the importance of the evidence. The court in *People v. Dumas*, 51 Misc.2d 929, 274 N.Y.S.2d 764 (S.Ct., St. Lawrence Co.1966) did not dismiss the indictment, but gave defense counsel an opportunity to peruse the grand jury minutes. In *People v. Santoro*, 63 N.Y.S.2d 615 (Kings Co.Ct.1946), the district attorney moved for dismissal of the indictment because it was based on perjured testimony.

tends that there is no way of telling at this point whether the other defendants have defenses antagonistic to Olin's and whether a *Bruton* problem will arise.

██ Fed.R.Crim.P. rule 8(a) has no applicability to the joinder of two or more defendants for trial. *United States v. Papadakis*, 510 F.2d 287 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975); *United States v. Laca*, 499 F.2d 922 (5th Cir. 1974); *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Mandel, supra.* Rule 8(b) permits joinder of defendants when "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Olin argues that there are no allegations demonstrating Olin's participation with the individual defendants in the same series of acts and transactions. Olin is not named in the conspiracy count, nor in the first seven substantive counts. Rule 8(b) does not require that each defendant be charged in each count, only that the defendants have participated in the series of acts or transactions that gives rise to the counts in the Indictment. *United States v. Laca, supra; United States v. Roselli, supra; United States v. Mandel, supra*, at 1046. Normally, a conspiracy count provides the connecting link among defendants and offenses. *See, e. g., United States v. Laca, supra; United States v. Slawik*, 408 F.Supp. 190 (D.Del.1975), *aff'd without opinion*, 564 F.2d 90 (3d Cir. 1977).

██ Olin argues that there is no nexus among the counts of the Indictment and that each count represents a separate transaction, at least as to it.[6] The Government's argument that the conspiracy count provides a common link is unavailing as to Olin because Olin is not charged in such count.

However, a common link may exist even where there is no conspiracy count. *Evans v. United States*, 349 F.2d 653, 658 (5th Cir. 1965). Olin was under court order, as alleged in Count II, and subsequently was obliged by statute, as alleged in Count XXII, to provide the Government with reports of mercury discharge to the Niagara River. The proof of these facts will be identical for counts II through XXI and counts XXII through XXVIII. The Indictment alleges that the defendants knowingly supplied false information in such reports. The proof as to the falseness of the reports will be identical for each defendant. What will vary is the proof of each defendant's participation and each defendant's intent in filing the report. Joinder is proper where there is a substantial identity of facts and participants among the counts in an indictment. *United States v. Levine*, 546 F.2d 658 (5th Cir. 1977); *United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975). The facts set forth in the Indictment herein show sufficiently the existence of a series of acts and transactions and each defendant's participation in such series. Joinder of defendant Olin was proper.

██ Olin also urges that severance should be granted under Fed.R.Crim.P. rule 14 because prejudice will inure to Olin by being tried with its employees and that the jury will not be able to segregate the proof as to each defendant. Although this is not a simple case, the proof as to each count can be compartmentalized. The substantive counts allege discrete acts, and much of the evidence will be documentary in nature. Usually, limiting instructions as to the use of evidence and careful charges concerning the counts pertaining to each defendant and the evidence that can be used against each defendant are considered enough to overcome any unnecessary prejudice. *United States v. Levine, supra; United States v.*

---

**6.** Many of the cases cited by Olin present situations in which an indictment charged two separate types of offenses or two series of offenses and the only link was a common defendant. *See, e. g., United States v. Whitehead*, 539 F.2d 1023 (4th Cir. 1976); *United States v. Marionneaux*, 514 F.2d 1244 (5th Cir. 1975); *King v.*

*United States*, 355 F.2d 700 (1st Cir. 1966); *Ingram v. United States*, 272 F.2d 567 (4th Cir. 1959). The basic tenet of those cases is that one person's participation in several crimes does not justify joinder of all the participants in all the crimes in one indictment.

*Papadakis, supra; United States v. Laca, supra; United States v. Roselli, supra; United States v. Kelly,* 349 F.2d 720 (2d Cir. 1965), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). The court is aware of its continuing duty to oversee the trial and to insure that the joint trial does not cause undue prejudice to any defendant. Defendant Olin will be free to renew its motion during the course of the trial if it feels that such is warranted.

■ The arguments concerning a *Bruton* problem and antagonistic defenses are premature. Olin's papers did not allege specific facts showing why its defense is antagonistic to that of the other three defendants. It is possible that the three individual defendants may try to negate their culpability by blaming defendant Olin, but at this point there is nothing before me warranting such a conclusion. Similarly, a *Bruton* problem would arise only if the three co-defendants decided not to take the stand. *See, United States v. Mandel, supra,* at 1049.

Defendant's request for the out-of-court statements made by its co-defendants is denied.

### Applicability of 18 U.S.C. § 1001

Olin argues that it was improperly charged with violations of 18 U.S.C. § 1001. Olin states that it was not required by law or by regulation to file the mercury discharge reports from 1970 through 1975 and that no federal official had the power to compel Olin to file the reports. According to Olin, the fact that the reports were filed as a result of a stipulation entered into a civil action, *United States v. Olin Corp.,* Civil Action No. 1970–338 (W.D.N.Y.1970), brings the reports exclusively within the jurisdiction of the federal district court. Olin asserts that false statements made in a judicial proceeding are not statements made in a "matter within the jurisdiction of any department or agency of the United States." Olin argues that if it had failed to file the reports the Government could have brought an action to compel compliance

with the stipulation. The Government contends that the EPA and its predecessor, the Federal Water Quality Administration ("the FWQA"), had jurisdiction over the nation's waterways and therefore had jurisdiction over the information in the reports. In addition, either agency could have initiated further court action if the reports showed excess levels of mercury discharge by referring the matter to the Department of Justice. Defendants Kleiber and Schmiege join in this motion.

■ The ability of the Government to enforce the stipulation if Olin failed to file the reports is irrelevant to the issues herein. The Government is not prosecuting Olin for failure to file the reports, but for filing false reports. The stipulation set a limit on the amount of mercury Olin could discharge to the Niagara River and gave the Government the right to bring on further court proceedings if the reports showed amounts of mercury discharge in excess of ½ pound per day. The reports were to be filed with the regional office of the FWQA or its successor in interest. This is the only agency mentioned in the stipulation. It was clearly within the contemplation of the parties that the FWQA would monitor the reports and advise the Justice Department of non-compliance.

■ Section 1001 is not limited to statements required by law or regulation, *Neely v. United States,* 300 F.2d 67 (9th Cir.), *cert. denied,* 369 U.S. 864, 82 S.Ct. 1030, 8 L.Ed.2d 84 (1962), and such section is not to be interpreted narrowly or technically, *United States v. Adler,* 380 F.2d 917 (2d Cir.), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 561, 19 L.Ed.2d 602 (1967), *Ogden v. United States,* 303 F.2d 724 (9th Cir. 1962), *rehearing denied,* 323 F.2d 818 (9 Cir. 1963), *cert. denied,* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964). The phrase "within the jurisdiction of any department or agency" has been interpreted to mean "the power to act upon information when it is received." *United States v. Adler, supra* ; *Ogden v. United States, supra.* See, also, *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct.

504, 99 L.Ed. 594 (1955). Olin entered into an agreement with the United States and was under a duty to furnish reports to the FWQA. The FWQA had the responsibility for the nation's waterways and the parties reasonably chose it to monitor compliance with the agreement. Once Olin had entered into the agreement with the Government, it had the duty to supply truthful information concerning the level of mercury discharge. If the FWQA became aware that Olin was not adhering to the terms of the agreement, it could refer the matter to the Justice Department for further court proceedings. The FWQA had the power to act on information received from Olin, and therefore, the reports were a "'matter within the jurisdiction of [a] department or agency of the United States.'"[7]

Defendant's motion to dismiss counts II through XXI based on the alleged inapplicability of 18 U.S.C. § 1001 is denied.

### Preemption of Section 1001 by Section 1319(c)(2)

Olin claims that 33 U.S.C. § 1319(c)(2) has "preempted the field of regulating and controlling pollutants in our national waterways" and, therefore, that the Government is precluded from charging Olin with violations of 18 U.S.C. § 1001 for conduct that falls within section 1319(c)(2). The Government argues that the reports mentioned in counts II through XXI were not subject to the Water Pollution Control Act ("the Act"). Defendants Kleiber and Schmeige join in this motion.

The Government's argument is well taken. Section 1319(c)(2) makes it a crime to submit false statements in reports mandated by the Act. Such reports could be required by a permit or by the Administrator of the EPA ("the Administrator") pursuant to his authority under section 1318 of the Act. There is no evidence in the record that Olin had any obligation *under the Act* to file the reports mentioned in counts II through XXI of the Indictment. Olin did not obtain a permit until January 31, 1975 and there is no indication that the Administrator had exercised his power under section 1318 to compel Olin to file the reports. Olin argues that the Administrator could enforce section 1319 even if a permit had not been issued pursuant to section 1342. Section 1319 only applies when the Administrator finds that a violation of a permit condition or of a particular section of the Act has occurred. Section 1319(c)(2) could not be applied to any party who did not have a specific duty under the Act to file or maintain records or reports and, therefore, it does not apply to the conduct outlined in counts II through XXI.

Defendants' motions to dismiss counts II through XXI on the ground of preemption are denied.

### Failure of Indictment to Allege Materiality

Olin argues that the Indictment is insufficient because it fails to allege that the false statements were material. The Government argues that an indictment need not allege materiality *in haec verba.*

---

7. Because I have rejected Olin's contention that the matter was not subject to the jurisdiction of the FWQA, it is unnecessary to decide whether the district court in this case should be considered an agency or department of the United States. In *United States v. Bramblett,* 348 U.S. 503, 75 S.Ct. 504, 99 L.Ed. 594 (1955), the Court stated that section 1001 applied to the judicial and executive branches of the Government. However, some courts in reviewing the matter have determined that the Supreme Court did not mean to make a broad sweeping statement and that the section only applies where the court's housekeeping or administrative functions are involved and does not apply to judicial proceedings themselves. *See, United*

States v. D'Amato, 507 F.2d 26 (2d Cir. 1974) (18 U.S.C. § 1001 does not apply to private civil litigation); *United States v. Erhardt,* 381 F.2d 173 (6th Cir. 1967) (statute does not apply to evidence introduced at criminal trials); *Morgan v. United States,* 114 U.S.App.D.C. 13, 309 F.2d 234 (1962), *cert. denied,* 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416 (1963) (concealing name, identity and non-admission to the bar from district court is within 18 U.S.C. § 1001). The facts of the case at bar are more closely analogous to *Morgan v. United States, supra,* than to those of cases involving traditional trial tactics. The other cases cited by Olin do not support its argument that the judicial proceedings exception applies to the instant case.

Defendants Kleiber and Schmiege join in this motion.

 The cases cited by Olin in support of its argument do not involve indictments under 18 U.S.C. § 1001. Therein, the courts considered claims that the indictment failed to allege an essential element of the offense. The courts stated that, although the indictment must allege the essential elements of an offense, no specific words or form need be used. *United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976); *United States v. Wabaunsee*, 528 F.2d 1, 3 (7th Cir. 1975). The Second Circuit's Court of Appeals does not require the word "material" to be alleged in an indictment charging violations of 18 U.S.C. § 1001. *See, United States v. Rodriguez*, 556 F.2d 638 (2d Cir. 1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1233, 55 L.Ed.2d 762 (1978); *United States v. Adler, supra* ; *United States v. Marchisio*, 344 F.2d 653, 666 (2d Cir. 1965). An indictment under section 1001 is sufficient if the facts alleged show the materiality of the statement. *See, United States v. McGough*, 510 F.2d 598 (5th Cir. 1975). A statement is material if it is capable of influencing or affecting a governmental function. *Id.* It is not necessary that an indictment show conclusively that the statements are material; the facts alleged must warrant an inference that the statement is material. The instant Indictment sets forth the statements alleged to be false, in what manner they are false, the agency to which the statements were submitted and the reason for their submission. The Indictment sufficiently indicates the materiality of the statements.

Defendants' motions to dismiss counts II through XXI of the Indictment for failure to allege materiality are denied.

### Duplicity

 Olin contends that counts IX through XXI of the Indictment are duplicitous. According to Olin, 18 U.S.C. § 1001 contains three distinct offenses, two of which are charged in said counts. The Government argues that the three clauses in section 1001 set forth alternative means

of committing the offense and, therefore, do not constitute discrete crimes. Defendants Kleiber and Schmiege join in the motion and additionally argue that counts II through VIII are also duplicitous.

Section 1001 states:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Olin claims that the Indictment charges it with the separate offenses of making a false statement and making and using a false writing or document knowing the same to contain a false statement or entry.

Olin cites *United States v. Diogo*, 320 F.2d 898 (2d Cir. 1963), in support of its position. Defendants therein were charged with having made false statements to the Immigration and Naturalization Service ("the INS"). They attacked their convictions on the ground that the Government had failed to prove a violation of section 1001 because their statements to the INS concerning their respective marital statuses were not false at the time they were made. No question concerning the duplicity of the indictment was raised. In dictum the court stated: "It is well established that this section encompasses within its proscription two distinct offenses, concealment of a material fact and false representations. * * * The objective of both offenses may be the same * * *. What must be proved to establish each offense, however, differs significantly." *Diogo, supra*, at 902. Three cases were relied upon by the court to support this conclusion. None of those cases involved the issue of duplicity. Defendant, in *United States v. Uram*, 148 F.2d 187 (2d

Cir. 1945), challenged the section 80[8] count of the indictment, arguing that it was invalid because it failed to state the trick, scheme or device by which defendant had concealed a material fact. The court stated that the false statement made by defendant would itself "be sufficient to constitute * * * a scheme and trick * * * ." The court went on to state: "[I]n fact, another *clause* of Sec. 80, makes it a crime to 'make or cause to be made any false or fraudulent statements or representations.' It is the knowing falsity of the statement which is the material part of the statutory crime, not the vehicle of its perpetration." (emphasis added) *Uram, supra,* at 190. This last statement weighs against a conclusion that the court considered section 80 to contain three distinct crimes. The question facing Judge Weinfeld in *United States v. Lange,* 128 F.Supp. 797 (S.D.N.Y.1955), was whether an indictment charging a violation of the false statement clause had to allege the materiality of the statement. He concluded that the provisions of section 1001 were distinct and that materiality need not be pleaded where the offense charged was a violation of the second or third clause of section 1001. In *United States v. Kenny,* 236 F.2d 128 (3d Cir. 1956), defendant was charged in one indictment with concealment of a material fact and, in a second indictment, defendant and other persons were charged as partners with making false statements. The indictments were joined for trial. At the first trial all defendants were acquitted of the second charge and the jury could not reach a verdict as to the first charge. A second trial was held and defendant was convicted. Defendant argued that the second trial on the first charge was barred by his acquittal of the second charge at the first trial. There is nothing in the court's affirmance to support a conclusion that section 1001 involves two distinct offenses. It is not clear from the court's opinion in *Diogo* why it made the statement concerning the distinct nature of offenses under § 1001. At page 909, the court discusses the prosecution's argument that the

conviction should be sustained because the proof showed concealment of a material fact. Two problems with this approach were noted: (1) the variance between proof and pleading; and (2) the lack of jury instructions on the issue. The court's conclusion that a conviction could not be sustained on grounds not alleged in the indictment does not persuade me to conclude that a conviction cannot stand when several alternative means of committing an offense are pleaded and the government proves only one of them.

Furthermore, Olin's argument is premised on the supposition that the differences in proving the making of false statements and the making and using of false writings are similar to the differences in proving concealment and falsity. It has not cited any cases supporting such a conclusion and its arguments on this point fall short of persuasion. At pages 27 through 29 of its brief Olin argues that a person cannot be convicted of using false writings unless the Government proves that the person had knowledge that it contained false statements whereas a person can be convicted of making false statements without proof that he or it knew the statements to be false. The statute requires the Government to prove that the acts were done knowingly and willfully. A guilty verdict on any count could not represent a finding by the jury that Olin "made the false writing, through an employee, without knowledge." The Indictment alleges a defraudation of the Government occasioned by the submission of false reports to the EPA. It is this type of conduct that section 1001 was designed to punish.

The other cases cited by Olin do not support its argument. Both *United States v. Zeidman,* 540 F.2d 314 (7th Cir. 1976), and *United States v. Isaacs,* 347 F.Supp. 743 (N.D.Ill.1972), favor the Government's position. Although the indictments in *United States v. Starks,* 515 F.2d 112 (3d Cir. 1975), *United States v. Tanner,* 471 F.2d 128 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972), *Bins v. United States,*

---

8. The predecessor of section 1001.

331 F.2d 390 (5th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964), and *United States v. Leggett*, 312 F.2d 566 (4th Cir. 1962), were held to be duplicitous, the facts of those cases are distinguishable from the facts of the case at bar.

█ Section 1001 does not contain three separate offenses; each clause represents an alternative means of committing the single offense. *United States v. UCO Oil Co.*, 546 F.2d 833 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *United States v. Stephens*, 315 F.Supp. 1008 (W.D.Okl.1970). *See, generally, Crain v. United States*, 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896); *United States v. Amick*, 439 F.2d 351 (7th Cir.), *cert. denied*, 404 U.S. 823, 92 S.Ct. 47, 30 L.Ed.2d 51 (1971). The counts charging violations of section 1001 are not duplicitous.

Olin's motion to dismiss counts IX through XXI and Kleiber's and Schmiege's motions to dismiss counts II through XXI on the ground of duplicity are denied.

### Multiplicity

█ Olin argues that the section 1001 counts of the Indictment are multiplicitous. Kleiber and Schmiege agree with Olin's position. Although the reports referred to in such counts were filed as a result of the stipulation in *United States v. Olin Corp.*, *supra*, each report is a separate writing and different evidence will have to be introduced to prove the falsity of each report. The Indictment is not multiplicitous. *See, United States v. UCO Oil Co.*, *supra* ; *United States v. Bettenhausen*, 499 F.2d 1223 (10th Cir. 1974); *United States v. Matanky*, 482 F.2d 1319 (9th Cir.), *cert. denied*, 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973), *rehearing denied*, 414 U.S. 1138, 94 S.Ct. 885, 38 L.Ed.2d 764 (1974); *United States v. Uram*, *supra* ; *United States v. Grossman*, 154 F.Supp. 813 (D.N.J.1957).

### Grand Jury Due Process

█ Olin asks that the Government be ordered to supply it with specified information concerning the grand jury proceedings in order that Olin can determine whether there have been any abuses. Broad, Kleiber and Schmiege join in the motion. None of the defendants alleges any facts tending to show that improprieties did occur. Olin's counsel states "experience has taught us that areas of grand jury due process investigated in this application are well-identified sectors where serious abuses have occurred in the past." (Motion at 49.) Fed.R.Crim.P. rule 6 places the burden on a defendant to show that grounds may exist for dismissal of an indictment because of matters occurring before the grand jury. *United States v. Fife*, 573 F.2d 369 (6th Cir. 1976). Defendants' unsupported assertions that abuses may have occurred are not sufficient to overcome the presumption of regularity surrounding grand jury proceedings. *United States v. Greenberg*, 204 F.Supp. 400 (S.D. N.Y.1962).

Defendants' requests for information concerning the grand jury proceeding are denied.

### Instructions Given to the Grand Jury

Olin requests disclosure of grand jury minutes dealing with instructions to the grand jurors. It does not pinpoint any particular problems, but states that it will move against the Indictment if "failures or inaccuracies" appear. Broad, Kleiber and Schmiege join in the request. The Government argues that defendants have not shown a particularized need for the grand jury minutes.

█ Several state court cases were cited by Olin in support of its motion.[9] Although the judge in *People v. Mackey*, 82 Misc.2d 766, 371 N.Y.S.2d 559 (Suffolk Co. 1975), referred to the due process clause in his opinion, all the cited cases are based on New York State law and, therefore, are inapplicable to federal grand jury proceedings. Unsupported suspicions of grand jury abuse do not justify disturbing the secrecy

---

9. Olin did not supply the citation for *People v. Port*.

of such body's proceedings. *United States v. Dixon*, 538 F.2d 812 (9th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 383, 50 L.Ed.2d 326 (1976). *See, generally, United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Pittsburgh Plate Glass Co. v. U. S.*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *Lawn v. United States*, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

Defendants' motions for disclosure and to dismiss the Indictment are denied.

### Grand Jury Continuity

 Olin alleges that some of the grand jurors who voted the Indictment did not hear all the evidence. It requests production of the grand jury's "log book" or "witness book" so that its complaint can be fully investigated. Olin states that, if its claims prove to be correct, dismissal of the Indictment would be warranted. Broad, Kleiber and Schmiege join in the request for production.

The United States Court of Appeals for the Second Circuit has considered the argument raised by Olin and has rejected it. *United States ex rel. McCann v. Thompson*, 144 F.2d 604 (2d Cir. 1944). *Accord, United States v. Colasurdo*, 453 F.2d 585 (2d Cir. 1971), *cert. denied*, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972). *See, also, United States v. Pastor*, 419 F.Supp. 1318 (S.D.N.Y.1975).

Defendants' motions for production of the "log book" or "witness book" are denied.

### Unauthorized Persons Before the Grand Jury

 Olin seeks discovery of the list of witnesses who appeared before the grand jury to aid it in determining whether unauthorized persons appeared before it. It does not allege any facts from which such a conclusion might be drawn. Olin cites one federal case, *In re Grand Jury Subpoenas*, 573 F.2d 936 (6th Cir. 1978), in support of its motion. The court therein held that an Internal Revenue Service ("IRS") attorney who had participated in the IRS's investiga-

tion of General Motors Corporation ("GM") was disqualified from conducting proceedings before the grand jury investigating GM to determine if. violations of 18 U.S.C. § 1001 had occurred during the IRS investigation. Although the case provides an example of an "unauthorized person", it does not support a conclusion that discovery of the grand jury witness list is permissible when the request for such is based upon conjecture.

Olin's motion for discovery of the list of witnesses before the grand jury is denied.

### Leaving Indictment With Grand Jurors

 Olin moves for dismissal of the Indictment, based upon the prosecutor's preparation of the Indictment before the grand jury voted a true bill against Olin. The motion is unsupported by any legal authority. There is nothing in Fed.R. Crim.P. rule 6 to support defendant's contention that the grand jury cannot have a copy of a Government-prepared indictment before it when voting. *See, Gaither v. United States*, 134 U.S.App.D.C. 154, 413 F.2d 1061 (1969). Olin has not presented evidence to overcome the presumption of regularity accorded grand jury proceedings. *Accord, United States v. Winchester*, 407 F.Supp. 261 (D.Del.1975).

Olin's motion to dismiss based on the Government's preparation of the Indictment is denied.

### Summarization of Testimony Before the Grand Jury

 Olin contends that dismissal of the Indictment is necessary because it is likely that the Government summarized all or part of the proof before the grand jury and, therefore, there is a possibility that the Indictment was returned by some jurors who heard only hearsay testimony. Olin's argument that all the grand jurors who voted the Indictment had to have heard all the testimony was rejected by me at hereinabove. No facts have been submitted by Olin to show that fewer than twelve of the jurors who voted the Indictment heard

all or some of the evidence presented. Mere supposition will not support a motion to dismiss based on the presentation of incompetent evidence. *United States v. Winchester, supra; United States v. Crisona,* 271 F.Supp. 150 (S.D.N.Y.1967); *United States v. Silverman,* 132 F.Supp. 820 (D.Conn.1955). *United States v. Estepa,* 471 F.2d 1132 (2d Cir. 1972), is not applicable to the facts of the instant case.

Olin's motion to dismiss the Indictment because of any summarization of the evidence is denied.

### Return of the Indictment

 Olin asserts that dismissal of the Indictment is necessary because the grand jury did not fairly consider all the evidence in the case. According to Olin, the Indictment was returned "in an extremely short period of time." Again, no facts are stated to support Olin's contention. Mere speculation as to the adequacy of the grand jury's deliberations does not provide support for a motion to dismiss the Indictment. *See, United States v. Winchester, supra; United States v. Silverman, supra.*

Olin's motion to dismiss the Indictment due to the grand jury's failure to consider adequately the evidence is denied.

### Discriminatory Prosecution

Olin contends that the present Indictment is the result of discriminatory prosecution. According to Olin, many other corporations have filed false reports and have not been prosecuted. Olin also alleges that those corporations which have disclosed their own violations have been punished civilly and not criminally. The Government states that its decision to prosecute Olin was based on its conclusion that civil penalties would not deter Olin from engaging in the prohibited conduct and cites Olin's non-compliance with the stipulation in the prior civil case in support of its conclusion. In addition, the Government argues that the facts alleged by Olin did not support a finding of discriminatory prosecution.

 "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962). Defendant must present facts tending to show that the prosecution is based on an unjustifiable standard or that it is the result of intentional and purposeful discrimination. *Oyler v. Boles, supra; United States v. Falk,* 479 F.2d 616 (7th Cir. 1973); *United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972). Defendant has not alleged any facts from which one could infer an improper motive on the part of the prosecutor.

Olin's motion to dismiss the Indictment on the ground of discriminatory prosecution is denied.

### Insufficiency of Evidence Before the Grand Jury

 Olin requests production of the testimony of all grand jury witnesses, arguing that a review of such testimony will show that there is insufficient evidence to support the charges in the Indictment. In the alternative, Olin asks that I conduct an *in camera* inspection of the transcripts and dismiss the Indictment.

Although I do not believe Olin has established a right to either production or my *in camera* inspection of the grand jury testimony, my decision on this motion is based on a finding that there is sufficient evidence to support the Indictment. At the time of Olin's Fed.R.Crim.P. rule 16 motion, I received the transcripts of the testimony of many of the grand jury witnesses. The testimony that I read convinces me that there was enough evidence before the grand jury to sustain the Indictment.

Olin's request for dismissal based on the insufficiency of the evidence before the grand jury is denied.

### Brady Materials

Olin requests production of all *Brady* materials in the prosecution's possession. In addition, it requests production of the prosecutor's file in court for examination by the court and defense counsel "so that a fair

determination can be made of that material which is favorable to the defence [sic]" (motion at 76). The Government does not dispute Olin's statement that it has a continuing obligation to disclose materials favorable to the defense.[10] It does oppose Olin's suggestion that the prosecutor's file be produced in court.

None of the cases cited by Olin supports its request for production of the prosecutor's file. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), did not expand the scope of pre-trial discovery available to the defendant; it deals with the defendant's right to a fair trial. *United States v. Agurs*, 427 U.S. 97, S.Ct. 2392, 49 L.Ed.2d 342 (1976); *United States v. Dotson*, 546 F.2d 1151 (5th Cir. 1977); *United States v. Scott*, 524 F.2d 465 (5th Cir. 1975). The Supreme Court has rejected the contention that a prosecutor has a duty to deliver his file to defense counsel. *United States v. Agurs, supra*, 427 U.S. at 111, 96 S.Ct. 2392. *In camera* inspection might be appropriate if there were a dispute over a specific document or statement. *See, United States v. Morell*, 524 F.2d 550, 553 n.2 (2d Cir. 1975); *United States v. Miller*, 411 F.2d 825, 831 (2d Cir. 1969).

It should be noted that many of the materials requested by Olin at pages 74 through 76 of its motion fall within the scope of the Jencks Act (18 U.S.C. § 3500) and, therefore, are not discoverable over the Government's objection until an appropriate point during trial. *United States v. Percevault*, 490 F.2d 126 (2d Cir. 1974); *United States v. Dotson, supra; United States v. Scott, supra.*

Olin's request for production of the prosecutor's file is denied.

### Unconstitutionality of 33 U.S.C. § 1319(c)(2)

Olin alleges that 33 U.S.C. § 1319(c)(2) is unconstitutional. Broad, Kleiber and Schmiege join in the motion. This contention does not appear to have been seriously raised because the issue was not briefed by Olin or by any other defendant. Defendants' less than cursory treatment of this point does not warrant the expenditure of court time. The motion is denied without prejudice to its renewal upon presentation of proper papers.

### Prejudicial Publicity

Olin also raised the issue of prejudicial publicity in its omnibus motion and the possible need for change of venue. At oral argument, Olin stated that it was willing to withdraw its change of venue motion, without prejudice to its renewal, if a postponement of the trial were granted. The other defense counsel joined in the request for a postponement. The Government did not oppose the request. On November 15, 1978, I issued an order granting the request for a postponement on the basis of pre-trial prejudicial publicity. Olin has not renewed its motion for change of venue. Therefore, the issue of pre-trial publicity is not now before me.

### Reconsideration of Fed.R.Crim.P. rule 16 Motion

At oral argument on the omnibus motion, Olin requested the grand jury testimony of three employees that had not been furnished to it by the Government. Olin also requested that I reconsider my decision that it was not entitled to the grand jury testimony of Robert Kennedy. The Government agreed to furnish the testimony of the three employees, J. Reed, A. P. Szustak and J. C. Curtis, Jr., but refused to provide the testimony of Kennedy.

In my June 9, 1978 Order I denied Olin's request for Kennedy's testimony. Nothing has come to my attention showing that Kennedy was personally involved in the conduct constituting the offenses alleged in the Indictment; therefore, Olin's motion for reconsideration is denied.

So ordered.

---

**10.** The Government states that it has not located any *Brady* materials thus far.